# EXHIBIT "A "

 

MIN: 1001558-0000036243-8          Loan Number: 0033792334

# NOTE

THIS NOTE IS A CONTRACT FOR A SHORT-TERM LOAN. THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. YOU HAVE THE RIGHT TO REFINANCE THE AMOUNT OF THAT PAYMENT AT THE TIME IT IS DUE AT THE LENDER'S PREVAILING RATES IF YOU MEET THE LENDER'S NORMAL CREDIT STANDARDS AND IF THE LENDER IS, AT THAT TIME, IN THE BUSINESS OF MAKING SUCH LOANS. YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

FEBRUARY 16, 2007               GREENWOOD VILLAGE          COLORADO
Date                                  City                             State

     9570 WEST MAPLEWOOD PLACE, LITTLETON, COLORADO 80123
Property Address                       City                    State        Zip Code

**1. BORROWER'S PROMISE TO PAY**
      In return for a loan that I have received, I promise to pay U.S. $49,500.00            (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2. INTEREST**
      I will pay interest at a yearly rate of        10.750 %.
      Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3. PAYMENTS**
      I will pay principal and interest by making payments each month of U.S. $462.07
      I will make my payments on the  1st      day of each month beginning on    APRIL 1, 2007             . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on MARCH 1, 2022 I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
      I will make my monthly payments at   6530 SOUTH YOSEMITE STREET #300, GREENWOOD VILLAGE, COLORADO 80111
                                   or at a different place if required by the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment. I will pay this late charge only once on any late payment.

### (B) Default

If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right do so if I am in default at a later time.

### (C) Notice From Note Holder

If I am in default for 10 days, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 20 days after the date on which the notice is mailed to me or if it is not mailed, 20 days after the date on which it is delivered to me.

### (D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its reasonable costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated FEBRUARY 16, 2007          , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"; (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address



if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above.  A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9.  RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note.  Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things.  The Note Holder may enforce its rights under this Note against each of us individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.  Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note.  Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_____ (Seal)
JEREMIAH J. GISH          -Borrower

_____ (Seal)
ANNE K. GISH              -Borrower

_____ (Seal)
                          -Borrower

Lehman Brothers Bank, FSB

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Pay To The Order Of

Without Recourse
Lehman Brothers Bank, FSB

By: _____
Leo C. Trautman, Jr.
Vice President

PAY TO THE ORDER OF
LEHMAN BROTHERS BANK FSB

WITHOUT RECOURSE THIS 16 DAY OF
February 20 07
CLARION MORTGAGE CAPITAL, INC.

BY: Katherine R. Wierda

Katherine R. Wierda
Assistant Treasurer



MIN: 1001558-0000036243-8                    Loan Number: 0033792334

# BALLOON NOTE ADDENDUM
## SECOND MORTGAGE

This Balloon Note Addendum is made this **16th** day of **FEBRUARY, 2007** and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to **CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION**
(the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at
**9570 WEST MAPLEWOOD PLACE, LITTLETON, COLORADO 80123**

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note, Borrower and Lender further covenant and agree as follows:

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

If, on **MARCH 1, 2022** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

All other provisions of the Note are unchanged and remain in full force and effect.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JEREMIAH J. GISH          -Borrower          ANNE K. GISH          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                              -Borrower

# EXHIBIT "B"

July 17, 2018


Jeremiah J. Gish
Loan#0033792037
Property Address: 9570 W Maplewood PL., Littleton, CO. 80123


Real Time Resolutions, Inc.
P.O. Box 35888, Dallas, TX 75235-1655
1349 Empire Central Dr. Suite 150,
Dallas, TX 75247-4029


QUALIFIED WRITTEN REQUEST (RESPA)


To Whom It May Concern:

   Please accept this correspondence as a Qualified Written Request (QWR) per the Real Estate Settlement Procedures Act (RESPA), codified as Section 2605 (e) of Title 12 of the United States Code. Although some requested documentation was received in the past, the response contained incomplete or unenforceable documentation, which is pertinent in determining your organization's ability to collect the debt. Therefore, I am asking that you provide the following requested documentation immediately:


   ✓ Original 1003 Loan Application
   ✓ Good Faith Estimate
   ✓ HUD-1 Settlement Statement
   ✓ Truth In Lending Disclosures Statement
   ✓ Current Promissory Note Recored Showing Lienholder


   In addition to the aforementioned requested documentation, please also furnish the Bailee Letter as required by the industry during the sale or transfer of debt along with any associated addendums to the promissory note (to include the allonge). The provisions set forth by TILA, 15 U.S.C. 1641 (f)(2), require the creditor, new owner or assignee of the debt to notify the borrower in writing of such a sale or transfer. Additionally and to further support the request, the Uniformed Commercial Code (UCC) also requires that "within 30 days of each assignment, transfer, or sell, the assignment of true sale must be recorded under States' statute. The dates of the allonge endorsement(s) and the notarized assignment(s) must match to prove true sales before a foreclosure can legally occur."

The final document request is pertaining to the Affidavit of Debt and I am requesting a copy be furnished by your organization as required. All lending institutions and debtors are required to attach an Affidavit of Debt at the same time this loan was sold or transferred by or to your institution and per the FDCPA; this Affidavit must be provided by the seller with proper accounting on the payment history. If this debt has been sold multiple times, please provide an Affidavit for each sale or transfer as is required by federal and state law to prove up the validity of the mortgage debt.

Thank you in advance for your cooperation in this matter and ask that you please send all documentation to my attention at the address below as soon as possible.

Sincerely,

Jeremiah J. Gish
9570 W. Maplewood PL.,
Littleton, CO. 80123

July 17, 2018

Jeremiah J. Gish
Loan#0033792037
Property Address: 9570 W. Maplewood PL., Littleton, CO. 80123

Real Time Resolutions, Inc.
P.O. Box 35888, Dallas, TX. 75235-1655
1349 Empire Central Dr. Suite 150,
Dallas, TX 75247-4029

REQUEST FOR VALIDATION OF DEBT (FDCPA)

To Whom It May Concern:

I am writing to you to request specific itemized information about my accounting and servicing of my mortgage and of the need for understanding and clarification of various charges, credits, debits, transactions, actions, payments, analyses and records related to the servicing of my loan from its inception to the present date.

I am disputing the validity of the current debt, which your institution alleges to be owed. To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of my mortgage loan from its inception until the present date.

Upon receipt of this letter, I request that you refrain from reporting any negative credit information to any credit reporting agencies until you respond to my request(s). I also request that you conduct your own investigation and audit of my account since its inception to "validate" the debt you claim is owed to you accurately to the penny. Please do not rely on previous servicers or originators assurances or indemnity agreements and refuse to conduct a full audit and investigation of my loan.

I want to ensure that I have not been the victim of such predatory practices by your organization or by any others that have either originated or serviced my loan. To ensure this is not the case, I am requesting a thorough review, examination, accounting and audit of my mortgage loan. This exam and audit should review my mortgage loan file from the date of the initial contact, application and the origination of my loan to the present date and I have requested the information so that I may perform a simultaneous audit.

As such, please treat this letter as a Qualified Written Request (QWR) under the Real Estate Settlement Procedures Act (RESPA) as it relates to Section 2605(e) of Title 12 of the United States Code revision of the Dodd Frank Wall Street Reform and Consumer Protection Act. RESPA provides substantial penalties and fines for failure to comply with this request to provide supporting documentation and answers to the questions posed in this letter within twenty (20) days of receipt of this QWR correspondence.

In order to conduct this examination and audit, I need to have full and immediate disclosure including copies of all pertinent information regarding my loan. The documents requested and answers to questions are vital to ensure that my loan:

- ✓ Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to RESPA, FDCPA, HOEPA and other laws
- ✓ That any sale or transfer of my loan was conducted in accordance with proper laws and was a "true sale" of the note
- ✓ That the claimed holder in due course of the promissory note and deed of trust is holding such note in compliance with state and federal laws and is entitled to the benefits of the payments
- ✓ That all appropriate disclosures of terms, costs, commissions, rebates, kickbacks, fees etc. were properly disclosed at the inception of my loan
- ✓ That each servicer and sub-servicer of my mortgage has serviced my mortgage in accordance with the terms of my mortgage, promissory note and/or deed of trust
- ✓ That each servicer and sub-servicer of my mortgage has serviced my mortgage in compliance with local, state and federal statutes, laws and regulations
- ✓ That my loan has properly been credited, debited, adjusted, amortized and charged correctly
- ✓ That interest and principal have been properly calculated and applied to my loan
- ✓ That the principal balance has been properly calculated and accounted for on my loan
- ✓ That no charges, fees or expenses, not obligated by the borrower(s) in any agreement, have been charged or assessed to or collected on my account

In order to validate the debt and audit my account, I need copies of pertinent documents to be provided and answers in writing to various servicing questions to be supplied. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on my account.

As such, please submit copies of the following documents as quickly as possible:

1.  All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel's CPI system, any system by Alltell or any other similar mortgage servicing software used by you, any servicers, or sub-servicer of my mortgage account from the inception of my loan to the date written above

2.  All descriptions and legends of all codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review my mortgage account may properly conduct their work

3. All purchase and sale of mortgage agreements, sale or transfer of servicing rights or other similar agreement related to any assignment, purchase or sale of my mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to the mortgage, promissory note and deed of trust from the inception of my loan to the present date.

4. All prospectus' related to the sale or transfer of the note, deed of trust, mortgage and servicing rights or other similar agreement related to any assignment, purchase or sale of my mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to the mortgage, promissory note and deed of trust from the inception of my loan to the present date.

5. All assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of my mortgage, deed of trust, promissory note or other document that secures payment in this account from the inception of my loan to the present date.

6. All deeds in lieu, modifications to the mortgage, promissory note or deed of trust from the inception of my loan to the present date.

7. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer of my account for payment of any monthly payment, other payment, escrow charge, fee or expense on my account.

8. All escrow analyses conducted on my account from the inception of my loan until the date of this letter.

9. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on the disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

10. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by the borrower(s) or by others on my account.

11. All letters, statements and documents sent to the borrower(s) by your company.

12. All letters, statements and documents sent to the borrower(s) by agents, attorneys or representatives of your company.

13. All letters, statements and documents sent to the borrower(s) by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

14. All letters, statements and documents contained in my loan file or imaged by you, any servicer or sub-servicers of my mortgage from the inception of my loan to present date.

15. All electronic transfers, assignments, sales of the note, mortgage, deed of trust or other security instrument.

16. All copies of property inspection reports, appraisals, BPO's and reports done on the property.

17. All invoices for each charge such as inspection fees, BPO's, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

18. All checks used to pay invoices for each charged such as inspection fees, BPO's, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

19. All agreements, contracts and understandings with vendors that have been paid for any charge on my account from the inception of my loan to the present date

20. All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to my accounting of my loan from the inception of my loan until present date.

21. All loan servicing "transaction" records, ledgers, registers and similar items detailing how my loan has been serviced from the from the inception of my loan until present date.

In order to conduct the audit and review of my account and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of my mortgage account from its inception to the present date. Accordingly, can you please provide in writing the answers to the questions listed below in the various sections.

## LOAN ACCOUNTING & SERVICING SYSTEMS

For each of the following questions listed below, please provide a detailed explanation in writing that answers each question listed below:

1. Please identify each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of my loan to the present date.

2. For each loan accounting and servicing system identified by you and any sub-servicer or previous servicer from the inception of my loan to the present date, please provide the name and address of the company or party that designed and sold the system.

3. For each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of my loan to the present date, please provide the complete transaction code list for each system.

## DEBITS & CREDITS

For each of the following questions listed below, please provide a detailed explanation in writing that answers each question listed below:

1. In a spreadsheet form or in letter form in a columnar format, please detail each and every credit on my account and the date such credit was posted to my account as well as the date any credit was received.

2. In a spreadsheet form or in letter form in a columnar format, please detail each and every debit on my account and the date such credit was posted to my account as well as the date any debit was received.

3. For each debit or credit listed, please provide the definition for each corresponding transaction code you utilize

4. For each transaction code, please provide the master transaction code list used by you or previous servicers.

## MORTGAGE & ASSIGNMENTS

For each of the following questions listed below, please provide a detailed explanation in writing that answers each question listed below:

1. Has each sale, transfer or assignment of my mortgage or promissory note or any other instrument I executed to secure my debt been recorded in the county property records in the county and state in which my property is located from the inception of my loan to the present date
   a) If no, why

2. Have any sales, transfers or assignments of my mortgage or promissory note or any other instrument executed to secure the debt been recorded in any electronic fashion such as MERS or other internal or external system from the inception of my loan to the present date
   a) If yes, please detail for us the names of each seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument executed securing the obligation on my account that was not recorded in the county records where the property is located

## ATTORNEY FEES

For purposes of our questions below dealing with attorney fees, please consider the terms "attorney fees" and "legal fees" to be one in the same.

1. Have attorney fees ever been assessed to my account from the inception of my loan to the present date
   a) If yes, please detail each separate assessment of attorney fees to my account from the inception of my loan to the present date and the date of such assessment to my account

2. Have attorney fees ever been charged to my account from the inception of my loan to the present date
   a) If yes, please detail each separate charge of attorney fees to my account from the inception of my loan to the present date and the date of such charge to my account

3. Have attorney fees ever been collected from my account from the inception of my loan to the present date
   a) If yes, please detail each separate collection of attorney fees from my account from the inception of my loan to the present date and the date of such collection from my account

4. Please provide the name and address of each attorney or law firm that has been paid any fees or expenses related to my account from the inception of my loan to the present date

5. Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed authorized the assessment or collection of attorney fees.

6. Please detail and list in writing each separate attorney fee assessed to my account and for which corresponding payment period or month such late fee was assessed from the inception of my loan to present date.

7. Please detail and list in writing each separate attorney fee collected from my account and for which corresponding payment period or month such late fee was collected from the inception of my loan to present date.

8. Please detail and list in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

9. Please detail and list in writing any adjustments in attorney fees collected and on what date such adjustment were made and the reasons for such adjustment.

10. Has interest been charged on any attorney fee assessed or charged to my account.

11. Is interest allowed to be assessed or charged on attorney fees charged or assessed to my account.

12. How much in total attorney fees have been assessed to my account from the inception of my loan until present date.

13. How much in total attorney fees have been collected on my account from the inception of my loan until present date.

## SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term "suspense account" and "unapplied account" as one in the same.

1. Has there been any suspense or unapplied account transactions on my account from the inception of my loan until present date

   a. If yes, why

   b. In a spreadsheet or in letterform in a columnar format, please detail each and every transaction, both debits and credits that has occurred on my "suspense account" or "unapplied account" from the inception of my loan until present date

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

1. Have you reported the collection of late fees on my account as interest in any statement to the borrower(s) or to the IRS
2. Has any previous servicer or sub-servicer of my mortgage reported the collection of late fees on my account as interest in any statement to borrower(s) or to the IRS
3. Do you consider the payment of late fees as liquidated damages to you for not receiving the payment on time
4. Are late fees considered interest
5. Please detail in writing what expenses and damages you incurred for any payment that was made late
6. Were any of these expenses or damages charged or assessed to my account in any other way
    a) If yes, please describe what expenses or charges were charged or assessed to my account
7. Please describe in writing what expenses you or others undertook due to any payment I made which was late
8. Please describe in writing what damages you or others undertook due to any payment the borrower(s) made which was late
9. Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any signed agreement authorizing the assessment or collection of late fees
10. Please detail and list in writing each separate late fee assessed to my account and for which corresponding payment period or month such late fee was assessed from the inception of my loan to present date
11. Please detail and list in writing each separate late fee collected from my account and for which corresponding payment period or month such late fee was collected from the inception of my loan to present date
12. Please detail and list in writing any adjustments or late fees assessed and on what date such adjustment was made and the reasons for such adjustment
13. Has interest been charged on any late fee assessed or charged to my account
14. Is interest allowed to be assessed or charged on late fees charged or assessed to my account
15. Have any late charges been assessed to my account
    a) If yes, how much in total late charges have been assessed to my account from the inception of my loan until present date
16. Please provide the exact months and or payment dates you or other previous servicers of my account and claim of the borrower(s) having been late with a payment from the inception of my loan to the present date
17. Have late charges been collected on my account from the inception of my loan until present date
    a) If yes, how much in total late charges have been collected on my account from the inception of my loan until present date

## PROPERTY INSPECTIONS

For purposes of this section "property inspection" and "inspection fee" refer to any inspection of the property by any source and any related fee or expense charged for such inspection.

1. Have any property inspections been conducted on the property from the inception of my loan until the present date
   a) If yes, please explain the date of each property inspection conducted on the property that is the secured interest for the mortgage, deed or note
   b) Please explain the price charged for each property inspection
   c) Please explain the date of each property inspection
   d) Please explain the name and address of each company and person who conducted each property inspection on the property
   e) Please explain why property inspections were conducted on the property
   f) Please explain how property inspections are beneficial to the borrower(s)
   g) Please explain how property inspections are protective of the property
   h) Please explain your policy on property inspections
   i) Do you consider the payment of inspection fees as a cost of collection
      ➢ If yes, why
   j) Do you use property inspections to collect debts
   k) Have you used any portion of the property inspection process on the property to collect a debt or inform the borrower(s) of a debt, payment or obligation they owe
      ➢ If yes, please answer when and why
   l) Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed authorizing the assessment or collection of property inspection fees
   m) Have you labeled in any record or document sent to the borrower(s) a property inspection as a miscellaneous advance
      ➢ If yes, why
   n) Have you labeled in any record or document sent to the borrower(s) a property inspection as a legal fee or attorney fee
      ➢ If yes, why
   o) Please detail and list in writing each separate inspection fee assessed to my account and for which corresponding payment period or month such fee was assessed from the inception of my loan to present date
   p) Please detail and list in writing each separate inspection fee collected from my account and for which corresponding payment period or month such fee was collected from the inception of my loan to present date
   q) Please detail and list in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment
   r) Please detail and list in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment
   s) Has interest been charged on any inspection fees assessed or charged to my account
      ➢ If yes, when and how much was charged
   t) Is interest allowed to be assessed or charged on inspection fees charged or assessed to my account

u) How much in total inspection fees have been assessed to my account from the inception of my loan until present date

v) How much in total inspection fee have been collected on my account from the inception of my loan until present date

## BPO FEES

For each of the following questions listed below, please provide a detailed explanation in writing that answers each question listed below:

1. Have any Broker Price Opinions (BPO) been conducted on the property
   a) If yes, please explain the date of each BPO conducted on the property that is the secured interest for the mortgage, deed or note
   b) Please explain the price of each BPO
   c) Please explain who conducted each BPO
   d) Please explain why BPOs were conducted on the property
   e) Please explain how BPOs are beneficial to the borrower(s)
   f) Please explain how BPOs are protective of the property
   g) Please explain your policy on BPOs
   h) Have any BPO fees been assessed to my account
      ➢ If yes, how much in total BPO fees have been assessed to my account
   i) Have any BPO fees been charged to my account
   j) If yes, how much in total BPO fees have been charged to my account
   k) Please explain specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect a BPO fee from the borrower(s)

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide a detailed explanation in writing that answers each question listed below:

1. Did the originator of my loan have any financing agreements or contracts with your company

2. Did the originator of my loan have a warehouse loan agreement or contract with your company

3. Did the originator of my loan receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering my loan
   a) If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of my loan by your company or any affiliate

4. Please identify where the originals of the entire loan file are currently located and how they are being stored, kept and protected
5. Where the "original" promissory note or mortgage the borrower(s) is signed located
    a) Please describe its physical location and anyone holding this note as a custodian or trustee if applicable
6. Where is the "original" deed of trust the borrower(s) signed located
    a) Please describe its physical location and anyone holding this note as a custodian or trustee if applicable
7. Since the inception of my loan, has there been any assignment of the promissory note or mortgage to any other party
    a) If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment
8. Since the inception of my loan, has there been any assignment of the deed of trust to any other party
    a) If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment
9. Since the inception of my loan, has there been any sale or assignment of servicing rights to my mortgage loan to any other party
    a) If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale
10. Since the inception of my loan, has any sub-servicer serviced any portion of my mortgage loan
    a) If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced my mortgage loan
11. Has my mortgage loan been made a part of any mortgage pool since the inception of my loan
    a) If yes, please identify each and every loan mortgage pool that my mortgage has been a part of from the inception of my loan to the present date
12. Has each and every assignment of my mortgage or promissory note been recorded in the county land records where the property associated with my mortgage loan is located
13. Has there been any "electronic" assignment of my mortgage with MERS or any other computer mortgage registry service or computer program.
    a) If yes, please identify the name and address of each and every Individual
14. Have there been any "investors" who have participated in any mortgage backed security, collateral mortgage obligation or other mortgage security instrument that my mortgage loan has ever been a part of from the inception of my mortgage to the present date
    a) If yes, please identify the name, phone number and address of each and every individual, entity, or organization
15. Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to my loan from its inception to the current date written above
16. Please provide copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to my loan from its inception to the current date written above

Please provide the documents I have requested and a detailed answer to each of the questions within the required lawful time frame   Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional QWR letter.

Copies of this Qualified Written Request (QWR), validation of debt, request for accounting and legal records (dispute of debt letter) are being sent to HUD, all relevant state and federal regulatory agencies, local predatory lending task forces, consumer advocacy organization, congressional representatives, and various class action law firms.  It is my desire that you answer my questions, document and validate the debt to the penny, and correct and make right any errors uncovered.  RESPA provides substantial penalties and fines for non-compliance or answers to our questions provided in this letter within twenty (20) days.

In order to validate the debt and audit my account, I need copies of pertinent documents to be provided and answers in writing to various servicing questions to be sent to my attention at the following address:

> **Jeremiah J. Gish**
> **9570 W. Maplewood PL.,**
> **Littleton, CO. 80123**

For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on my account.  Please send all documentation to my attention at the address above as soon as possible.

Sincerely,

_(signature)_

Signature

_JEREMIAH J GISH_

Printed Name

Cc/   Housing and Urban Development (HUD)
      Federal Deposit Consumer Protection Agency (FDCPA)
      Federal Trade Commission (FTC)
      Consumer Financial Protection Bureau (CFPB)

# EXHIBIT "C"

After Recording Return To:
CLARION MORTGAGE CAPITAL, INC.
6530 SOUTH YOSEMITE STREET #300
GREENWOOD VILLAGE, COLORADO 80111
Loan Number: 0093792334

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN: 1001558-0000036243-8

THIS DEED OF TRUST is made on, FEBRUARY 16, 2007 among the Grantor,
JEREMIAH J. GISH AND ANNE K. GISH AS JOINT TENANTS

(herein "Borrower"),
the Public Trustee of  JEFFERSON  County (herein "Trustee"), and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), which is acting solely as nominee for Lender (as hereinafter defined) and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION
is organized and existing under the laws of  COLORADO  and has an address of

6530 SOUTH YOSEMITE STREET #300, GREENWOOD VILLAGE, COLORADO
80111 (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
JEFFERSON , State of Colorado:
LOT 3, BLOCK 26, KIPLING VILLAS, COUNTY OF JEFFERSON, STATE OF COLORADO.



which has the address of 9570 WEST MAPLEWOOD PLACE

[Street]

LITTLETON                      , Colorado   80123         (herein "Property Address");

[City]                                      [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property."

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated FEBRUARY 16, 2007          and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 49,500.00      , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on MARCH 1, 2022                ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Deed of Trust.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.    Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.
    2.    Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay

said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note; and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 20 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of such notice to Borrower as provided in paragraph 12 hereof. Trustee shall record a copy of such notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by applicable law and shall mail copies of such notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time when the purchaser will be entitled to Trustee's deed thereto. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and Trustee's expenses and withdrawal fee; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under

paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to release this Deed of Trust and shall produce for Trustee duly cancelled all notes evidencing indebtedness secured by this Deed of Trust. Trustee shall release this Deed of Trust without further inquiry or liability. Borrower shall pay all costs of recordation, if any, and shall pay the statutory Trustee's fees.

21. **Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

22. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☒ Balloon Rider   ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider   ☐ Biweekly Payment Rider

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 7 of this Deed of Trust.

_____ (Seal)
JEREMIAH J. GISH            -Borrower

_____ (Seal)
ANNE K. GISH               -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Witness:                    Witness:

_____    _____

COLORADO - SECOND MORTGAGE - 1/80
3806 - AS AMENDED FOR MERS          Page 7 of 8          DocMagic €Forms  800-649-1362
                                                        www.docmagic.com

State of Colorado
County of   JEFFERSON

    The foregoing instrument was acknowledged before me this
by JEREMIAH  J.  GISH  AND  ANNE  K.  GISH

_____
Signature of Person Taking Acknowledgment

| Title | ANNETTE M. BENNET<br>NOTARY PUBLIC<br>STATE OF COLORADO<br>My Commission Expires 3/2/2010 |

_____
Serial Number, if any

(Seal)                              My commission expires:

# EXHIBIT "D"



**REAL TIME**
**R E S O L U T I O N S**

08/01/2018

JEREMIAH J GISH
9570 W MAPLEWOOD PL
LITTLETON CO 80123-3432

RTR File Number:        0033792037

Dear JEREMIAH J GISH:

This letter is in regards to your correspondence in which you dispute the above-referenced account.   We would like to thank you for taking the time to contact Real Time Resolutions, Inc. ("RTR"), and we appreciate your patience while awaiting our response.   Your correspondence has been reviewed and we would like to provide you with the following information regarding your account:

- A copy of the Notice of Assignment, Sale or Transfer of Servicing Rights, dated 03/08/2007, which notified you that the servicing duties associated with the account were being transferred from Clarion Mortgage Capital to Aurora Loan Services effective 04/01/2007; to RTR effective 08/03/2011;
- A notification dated 07/01/2011 from Aurora Bank which notified you that the mortgage loan servicing would be transferred to their parent company, Aurora Bank, as well as a notification dated 07/15/2011 which notified you of the transfer from Aurora Bank FSB to RTR effective 08/01/2011;
- A copy of our Mortgage Collection, Processing, and Reporting Transfer Notification dated 08/04/2011, which notified you that the servicing duties associated with the account were transferred from Aurora/Lehman to RTR effective 08/03/2011;
- A copy of the signed promissory note, as well as a copy of the signed Deed of Trust, the instrument that secures the lien to the property commonly known as 9570 W Maplewood Place, Littleton, CO 80123;
- A copy of the Uniform Residential Loan Application;
- A copy of the HUD-1 Settlement Statement;
- Copies of the previous servicer's Customer Account Activity Statements and our Loan History Summary, itemizing the account's transaction history both prior to and while under our service;
- A copy of the signed Collection Agreement between the current investor, Aurora Loan Services LLC and RTR, effectively giving us the right to service the account on their behalf.

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. Real Time Resolutions, Inc. Colorado office location: 80 Garden Center, Building B, Ste 3, Broomfield, CO 80020; Phone (303) 920-4763. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. SEE WWW.COAG.GOV/CAR.

If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov. This account's current creditor is Aurora Commercial Corp..

1349 Empire Central Dr. Suite 150, Dallas,TX 75247-4029
Toll Free Customer Service: 1-888-361-7152
Corporate Office Hours: Monday - Friday 8:30am - 5:30pm Central
www.payrtr.com

C46                                                                                      Page 1 of 1

REPRESENTATION OF PRINTED DOCUMENT

# AURORA LOAN SERVICES

March 8, 2007

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

3640033792037634WELD030807
87387 0000126 001
JEREMIAH J GISH
ANNE K GISH
2411 S GARLAND CT
LAKEWOOD CO 80227

RE.   Aurora
Loan # 0033792037

Dear Borrower(s):

This letter is to notify you that the servicing of your mortgage loan is being assigned, sold or transferred from Clarion Mortgage Capital ("Clarion Mortgage Capital") to Aurora Loan Services ("Aurora"), effective April 01, 2007. The transfer of your mortgage loan to Aurora includes the right to collect payments from you

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present servicer is Clarion Mortgage Capital. If you have any questions relating to the transfer of servicing from your present servicer call Clarion Mortgage Capital's James R. Lewis at 303-643-0777. This is a collect call number

Beginning April 01, 2007, your new servicer will be Aurora Loan Services. The business address and toll-free telephone numbers for your new servicer are:

| Aurora Loan Services | Aurora Loan Services | Aurora Loan Services |
|---|---|---|
| Customer Service Department | Tax Department | Insurance Center |
| P.O. Box 1706 | P.O. Box 961233 | P.O. Box 2963 |
| Scottsbluff, NE 69363-1706 | Fort Worth, TX 76161-0233 | Phoenix, AZ 85062-2963 |
| 1 (800) 550-0508 | 1 (800) 550-0508 | 1 (800) 732-6578 |
| 6:00 A.M. to 7:00 P.M., MT | 8:00 A.M. to 5:00 P.M., MT | 6:00 A.M. to 6:00 P.M., MT |
| Monday through Friday | Monday through Friday | Monday through Friday |
| 8:00 A.M. to 12:00 P.M., MT | | |
| Saturday | | |

If you have any questions relating to the transfer of servicing to your new servicer, please call the numbers listed above. Please note the change of your loan number listed above and reference this loan number on all tax and insurance bills and any correspondence to Aurora.

The date that Clarion Mortgage Capital will stop accepting payments from you is March 31, 2007. The date that Aurora will begin accepting payments from you is April 01, 2007. Send all payments due on or after that date to Aurora Loan Services.

If you have been paying premiums for life, disability, accidental death insurance or other optional products, these policies will not transfer to Aurora. If you desire to continue your optional coverage, you can contact your optional insurance provider and discuss the possibility of remitting your premium directly.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605).

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

Aurora Loan Services
Attention: Customer Service Research
P.O. Box 1706
Scottsbluff, NE 69363-1706

### ***CONTINUED ON REVERSE SIDE***

DETACH AND RETURN BOTTOM PORTION

JEREMIAH J GISH
ANNE K GISH

Remit U.S. funds payable to Aurora Loan Services
Include your loan number on your check.

AURORA LOAN SERVICES
ATTN: CASHIERING
P.O. BOX 78111
PHOENIX AZ 85062-8111

| ACCOUNT NUMBER | PAYMENT AMOUNT DUE |
|---|---|
| 0033792037 | 462.08 |

Additional Principal

Additional Escrow

Late Charges/Fees

Other

Amount Enclosed $

☐ Please check here if mailing address, telephone number or email have recently changed and complete form on reverse side

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

 

July 1, 2011

8-704-58003-0156263-001-01-000-000-000-000

JEREMIAH GISH
ANNE GISH
9570 W MAPLEWOOD PL
LITTLETON CO 80123-3432

Aurora Loan Services LLC Mortgage Loan Account Number: 0033792037
Aurora Bank FSB Mortgage Loan Account Number: 0033792037

Dear Customer(s):

Aurora Loan Services LLC (Aurora Loan Services) and Aurora Bank FSB (Aurora Bank), want to take this opportunity to say "Thank You" and "Welcome."   Effective July 21, 2011, your mortgage loan servicing will be transferred from Aurora Loan Services to our parent company, Aurora Bank. This transfer does not affect the terms or conditions of your loan documents other than the terms directly related to the servicing of your loan.   You will keep the same mortgage loan account number, the same access to the web site, www.myAuroraLoan.com, and the same service that you experienced previously with Aurora Loan Services. Also, additional information regarding this change can be found on www.myAuroraLoan.com in the FAQ section.

In an effort to make this transfer as smooth as possible for you, below please find a brief list of important updates. Please take a moment to review this information, as it may answer many of your questions.

### Regarding Your Mortgage Statements, Payments, and Optional Products

1.   Aurora Bank will start accepting payments on July 21, 2011. Starting on that date, all future or past due payments should be sent to Aurora Bank at the same address to which you previously sent payments (noted below).   Please always include your Aurora Bank mortgage loan account number on your check and make it payable to Aurora Bank FSB. Every month you will receive a detailed statement from Aurora Bank reflecting all your activity and key financial data. Your first monthly Mortgage Account Statement will arrive in August.

2.   If you made payment(s) to Aurora Loan Services and any payment(s) was received on or after July 21, 2011, it will be processed by Aurora Bank. Because your mortgage loan account number and address to which you are sending your mortgage loan account payments are not changing, we don't anticipate any delay in processing your payment due to this transfer of servicing.

3.   If Aurora Loan Services is currently automatically drafting your monthly payment from your bank account, Aurora Bank will continue this service for you.  If you would like to discontinue your automatic drafting arrangement, please contact Aurora Bank at the phone number or address listed below.

4.   If your payment is issued by a third party, or if you make your payment through a bill pay or online service, or if your mortgage payment is drafted biweekly through a third party provider, please take the appropriate action to change the name of your mortgage loan servicer from Aurora Loan Services to Aurora Bank.  Because your payment address and account number are not changing, only the name needs to be changed with your bill pay/payment drafting service.

5.   In January 2012, in addition to your monthly statement, you will receive an Annual Statement from Aurora Bank listing all payments on your account during 2011, including payments made to Aurora Loan Services. This Annual Statement will report the amount of interest and real estate taxes you paid during 2011.

6.   If your monthly payment includes the collection of optional insurance premiums and/or membership fees, Aurora Bank will continue to collect your monthly premiums and/or membership fees and remit them to the appropriate provider(s).

7.   If you previously provided information or documentation to Aurora Loan Services in support of your request for a possible loan modification under the federal government's Home Affordable Modification Program ("HAMP") or you have been established on a HAMP Trial Period Plan, Aurora Loan Services will be transferring all your documentation to Aurora Bank. Prior to July 21, 2011, you should continue to make your monthly Trial Period Plan payments to Aurora Loan Services.  On or after July 21, 2011, you should make all Trial Period Plan payments to Aurora Bank, until such time that you are provided additional direction. Prior to July 21, 2011, approval decisions regarding your request for a possible HAMP loan modification will be made by Aurora Loan Services. On or after July 21, 2011, approval decisions regarding your HAMP loan modification request will be made by Aurora Bank.

8.   If you previously provided information and documentation in support of your request for approval of other possible loss mitigation options (including a loan modification, repayment agreement, forbearance agreement, short sale, or deed-in-lieu of foreclosure) Aurora Loan Services will be transferring all of your documentation to Aurora Bank.  Prior to July 21, 2011, approval decisions regarding your request for other possible loss mitigation options will be made by Aurora Loan Services.  On or after July 21, 2011, approval decisions regarding your loss mitigation option request will be made by Aurora Bank.

### How to Contact Us

Should you have questions, here are the applicable mailing addresses, toll-free numbers and hours of operation.
**CONTACT YOUR PRESENT SERVICER, Aurora Loan Services LLC, PRIOR TO July 21, 2011:**
**CUSTOMER SERVICE:**
1-800-550-0508
8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday, 8:00 a.m. to 9:00 p.m. (ET) Friday, 8:00 a.m. to 4:00 p.m. (ET) Saturday

**CONTACT YOUR NEW SERVICER, Aurora Bank FSB, ON OR AFTER July 21, 2011:**
**CUSTOMER SERVICE:**
1-800-550-0508
8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday, 8:00 a.m. to 9:00 p.m. (ET) Friday, 8:00 a.m. to 4:00 p.m. (ET) Saturday
www.myAuroraLoan.com

**SEND PAYMENTS TO:**
Aurora Bank FSB
P.O. Box 78111
Phoenix, AZ 85062-8111

### We Look Forward to Serving You

We greatly appreciate the trust you have placed in us. Aurora Loan Services would like to extend a sincere "thank you" for the opportunity to serve you, and from Aurora Bank comes a genuine "welcome."

Sincerely,

Sincerely,

Cassie Leet, VP Customer Service
Aurora Loan Services LLC

Pam Pedersen, VP Loan Transfer
Aurora Bank FSB

Enclosure: Aurora Bank FSB Privacy Notice

**Important information on reverse side of this letter**

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

When you provide a check, you authorize us to use information from your check to make a one-time electronic fund transfer from your account. If we use your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

**The following Notice is required by Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605)**
NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Aurora Loan Services LLC to Aurora Bank FSB, effective July 21, 2011.

The assignment, sale or transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. In this case, all necessary information is combined in this one notice.

Your present servicer is Aurora Loan Services LLC. If you have any questions relating to the transfer of servicing from your present servicer, please call Aurora Loan Services Customer Service Department toll free at 1-800-550-0508 8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday 8:00 a.m. to 9:00 p.m. (ET) Friday 8:00 a.m. to 4:00 p.m. (ET) Saturday

Your new servicer will be Aurora Bank FSB. The business address for your new servicer is the same address you previously used for Aurora Loan Services and is:

> Aurora Bank FSB
> ATTN: Customer Service
> P.O. Box 1706
> Scottsbluff, NE 69361-1706

The toll-free telephone number of your new servicer is the same toll free number as you previously used for Aurora Loan Services and is 1-800-550-0508. If you have any questions relating to the transfer of servicing to your new servicer call Customer Service at 1-800-550-0508.

The date that your present servicer will stop accepting payments from you is July 20, 2011. The date that your new servicer will start accepting payments from you is July 21, 2011. Send all payments due on or after that date to your new servicer.

The transfer of servicing rights may affect the terms of, or the continued availability of any optional insurance coverage or other membership products. If your monthly payment includes the collection of optional insurance premiums and/or membership fees Aurora Bank will continue to collect your monthly premiums and/or membership fees and remit them to the appropriate provider(s).

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to:

| PRIOR TO July 21, 2011: | ON OR AFTER July 21, 2011: |
|---|---|
| Aurora Loan Services LLC<br>ATTN: CUSTOMER RESEARCH<br>P.O. Box 1706<br>Scottsbluff, NE 69361-1706 | Aurora Bank FSB<br>ATTN: CUSTOMER RESEARCH<br>P.O. Box 1706<br>Scottsbluff, NE 69361-1706 |

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents. A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

 Aurora Bank FSB

July 15, 2011

3640033792037534GDB071511
69392 0000020 001
JEREMIAH GISH
ANNE GISH
9570 W MAPLEWOOD PL
LITTLETON CO 80123-3432

RE:  Aurora Bank FSB
Loan # 0033792037

Dear Customer(s):

You are hereby notified that the servicing of your loan, that is, the right to collect payments from you, is being transferred from Aurora Bank FSB (Aurora Bank) to Real Time Resolutions Inc effective August 1, 2011. The assignment, sale or transfer of the servicing of the loan does not affect any terms or conditions of the loan instruments, other than terms directly related to the servicing of your loan.

Questions relating to the transfer of servicing from Aurora Bank before August 1, 2011 should be directed to Aurora Bank Customer Service Department at 1-800-550-0508 between 8:00 AM and 11:00 PM, Eastern Time Monday through Thursday, 8:00 AM to 9:00 PM ET Friday, and 8:00 AM to 4:00 PM ET Saturday.

If you have questions relating to your loan after July 31, 2011, please contact Real Time Resolutions Inc's Customer Service.  The business address, toll-free telephone number and customer service hours for Real Time Resolutions Inc are:

Real Time Resolutions Inc
Customer Service
PO Box 36655
Dallas, TX 75235
877-469-7325
5:30 a.m  to 5:30 p.m , Monday through Friday

Effective August 1, 2011, please make your checks payable to Real Time Resolutions Inc and mail to the address below.  Aurora Bank will forward any payments or correspondence received after July 31, 2011 to Real Time Resolutions Inc for processing.  If your payments are currently paid through an automatic deduction from your checking or savings account, this service will be discontinued as of August 1, 2011.

Real Time Resolutions Inc

If you are currently making your loan payment through government allotment or have established a third party relationship to automatically make payments on your behalf, please ensure that (1) you take the necessary steps to advise them of your new loan number and (2) that the payee's name is changed to Real Time Resolutions Inc.

If you have been paying premiums for optional life, disability or accidental death insurance, these policies will not  transfer to Real Time Resolutions Inc.

In January 2012, you will receive a year-end statement from Aurora Bank reflecting  loan activity occurring between January 1, 2011 and July 31, 2011  A separate statement will be provided by  Real Time Resolutions Inc for activity between August 1, 2011 and December 31, 2011. Both statements will be mailed no later than January 31, 2012.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by Aurora Bank before its due date may not be treated by your new servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA gives you certain consumer rights  If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request.  A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number and your reason for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute.  During this 60-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.  However, this does not prevent the servicer from initiating foreclosure if grounds exist under the mortgage documents.

Section 6 of RESPA also provides the damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section  You should seek legal advice if you believe your rights have been violated.

Please retain this information with your loan documentation for future reference  Aurora Bank appreciates the opportunity to provide service on your loan and for allowing us to be of service to you.

Sincerely,

Cassie Leet
Customer Service Manager



**REAL TIME**
**R E S O L U T I O N S**

08/04/2011

JEREMIAH J GISH & ANNE K GISH
9570 W MAPLEWOOD PL
LITTLETON CO 80123-3432

Your new **REAL TIME RESOLUTIONS, INC.**   Loan Number:   **0033792037**
    Property:  9570W MAPLEWOOD PL
        LITTLETON, CO 80123

RE:  **Mortgage Collection, Processing, and Reporting Transfer Notification**

    Balance:                    $ 48,527.37
    Payoff as of:  08/03/2011       $ 52,872.23

Dear JEREMIAH J GISH :

You are hereby notified that the collection duties associated with your mortgage loan, that is the right to collect payments from you, is being transferred from Aurora/Lehman to **REAL TIME RESOLUTIONS, INC.** effective 08/03/2011.  This transfer of collection rights associated with your mortgage loan does not affect any terms or conditions of your mortgage instruments, other than the terms directly related to the collection of your payments.

**Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.If you notify this office in writing within 30 days of receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.! If you make written request to this office within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Please be aware that if you are currently in or have been discharged in bankruptcy, this letter is not an attempt to collect a debt. Moreover, in the event you are in or have been discharged in bankruptcy, this letter is not an attempt to foreclose on the real estate lien which still may encumber your home.  This correspondence is solely for informational purposes and is intended to provide you with notification of the above referred transfer of collection, processing, and reporting duties.  Due to your bankruptcy, you will not receive monthly billing statements unless we receive a written request from you.

Real Time Resolutions, Inc. specializes in the recovery and rehabilitation of secured and unsecured debts.  Real Time offers a staff of highly trained professionals dedicated to the successful restructure and repayment of consumer debt and understands that circumstances arise that may cause our customers financial difficulty.  We offer a variety of programs that may assist in resolving overwhelming debt. Depending on your personal and financial situation, you may qualify for one of the relief measures listed below.  Even if you don't feel one pertains to you, call us so we can discuss your situation and your options.

Refinance - Short Sale - Modification - Forbearance - Settlement

If you would like to contact us at any time about your loan, you may direct your inquires to us at the toll free number of 1-877-469 - REAL (7325) between the hours of 8:30 a.m. to 5:30 p.m., Central Standard Time, Monday through Friday.   If you would like to correspond with us by e-mail, please e-mail us at  **customerservice@rtresolutions.com.**

1750 Regal Row, Suite 120, Dallas, TX  75235-2287
Main 214-599-6363 • Toll Free 1-877-469-REAL (7325)
Hours of Operation:  Mon - Fri 8:30am - 5:30pm Central



**REAL TIME**
**R E S O L U T I O N S**

08/04/2011

Loan Number:      **0033792037**

Effective 08/03/2011, Aurora/Lehman will not accept payments, correspondence, or calls from you about your loan.  Such payments, correspondence or calls will only be accepted and processed by **REAL TIME RESOLUTIONS, INC.**  After 08/03/2011, your mortgage payments and correspondence should be directed to the following address:

| Correspondence | Payments |
|---|---|
| REAL TIME RESOLUTIONS, INC. | REAL TIME RESOLUTIONS, INC. |
| P.O. Box 36655 | Attn:  Payment Processing |
| Dallas, Texas  75235-1655 | P.O. Box 35888 |
| | Dallas, Texas  75235-0888 |

If you are currently making your mortgage payment through pre-authorized draft with  Aurora/Lehman, please be advised that after 08/03/2011 that service will be CANCELLED.

Mortgage Accidental Death, Life, Disability,  or Optional insurance will NOT remain a part of your monthly payment, AND you will need to make arrangements to pay the premium for these services directly to the insurer to prevent cancellation.

**You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):** During the 60-day period following the effective date of a transfer of loan servicing, a loan payment received by your previous servicer before its due date may not be treated by your new servicer a late and a late fee may not be imposed upon you. Section 6 of RESPA (12 U.S.C.) gives you certain consumer rights. If you send a "Qualified Written Request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of receipt of your request. A Qualified Written Request is written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that includes your name, account number and a statement of reasons for your belief that the account is in error or provides sufficient detail regarding other information sought by you. A "business day" is a day on which the business entity is open to the public for carrying on substantially all of its business functions. No later that 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with written clarification regarding any dispute. During the 60-business-day period, your servicer may not provide any information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents. All Qualified Written Requests must be mailed to:

REAL TIME RESOLUTIONS, INC.
Attn:  Qualified Written Requests
P.O. Box 35888
Dallas, Texas  75235-0888

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.

1750 Regal Row, Suite 120, Dallas, TX  75235-2287
Main 214-599-6363 • Toll Free 1-877-469-REAL (7325)
Hours of Operation:   Mon - Fri 8:30am - 5:30pm Central



08/04/2011                                              **Loan Number:**        **0033792037**

If you are not in bankruptcy, or have not been previously discharged in bankruptcy, you will soon receive monthly billing statements from us.  In the unlikely event that you do not receive a monthly billing statement, you should write your loan number, referenced above, on your check and mail it to us at the address referenced previously.

The following notices are required by the Fair Debt Collection Practices Act, and are primarily applicable to customers who are not in or have not been discharged in a bankruptcy:

This communication is from a debt collector.   This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

REAL TIME RESOLUTIONS, INC.
Toll Free:   1-877-469-REAL (7325)

For information about the Colorado Fair Debt Collection Practices Act, See www.coloradoattorneygeneral.gov/ca.
In-State Office: Colorado Manager, Inc. 80 Garden Center, Suite 3 Broomfield, CO 80020 ph: (303) 920-4763
A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

1750 Regal Row, Suite 120, Dallas, TX   75235-2287
Main 214-599-6363 ● Toll Free 1-877-469-REAL (7325)
Hours of Operation:   Mon - Fri 8:30am - 5:30pm Central

# EXHIBIT "E"



**REAL TIME**
RESOLUTIONS

October 18, 2018                                    <u>Sent via email to Patricia.Miller@coag.gov</u>

Colorado Division of Banking
1560 Broadway, Suite 975
Denver, CO 80202
Attn: Patricia Miller

**RE:**   Jeremiah Gish, Complaint Response

Ms. Miller,

Please allow this letter to serve as Real Time Resolutions, Inc.'s ("**RTR**") response to the complaint submitted by Mr. Jeremiah Gish (the "**Complaint**"). RTR is committed to customer service and we hope that this response addresses the concerns raised in the Complaint.

In the Complaint, Mr. Gish states that he has requested a line-by-line breakdown of all charges and assessments to his account from origination through present. Mr. Gish also states that he believes RTR's responses to certain items in his "QWR" were also incomplete and he requests an additional response. Finally, Mr. Gish asks about a conflict between RTR's welcome letter and Aurora Loan Servicing's corresponding transfer letter. RTR will address these items below.

With respect to Mr. Gish's request for a payment history from origination to present, RTR does not possess this information. RTR previously provided Mr. Gish with the prior servicer's payment history covering 2009, 2010, and part of 2011, as well as RTR's Loan History Summary that runs from 2011 through present. Unfortunately, RTR does not possess information dating from April 1, 2007 (the date of first payment) through the end of 2008. RTR has requested this information from the prior servicer but has yet to receive it. Additionally, RTR does not possess a line-by-line breakdown in one document, as his account has been serviced by multiple entities.

Nevertheless, RTR believes that the information previously provided responds to Mr. Gish's request. The prior servicer's payment histories show the application of all payments received through the date of last payment in 2010. RTR's Loan History Summary shows the accrual of all late fees. Interest is accruing monthly under the terms of Mr. Gish's promissory note. Specifically, interest is accruing at the annual rate of 10.75% on the unpaid principal balance of the account ($48,527.37) or $434.72 per month in interest. Outside of the principal balance, accrued interest, and late fees, RTR is not seeking to collect any other balances. RTR believes that each of these balances is ascertainable and illustrated by this response and the documentation previously provided, which was enclosed with the Complaint.

If RTR receives a payment history for 2007 or 2008 in the future, RTR will immediately provide a copy of such to Mr. Gish for review. If Mr. Gish has any questions about his balance based on the

Mr. Jeremiah Gish
October 18, 2018
Page 2 of 2

documentation or information provided or if Mr. Gish believes that RTR's reflected balance is incorrect, Ms. Gish should notify RTR so we can investigate and research his specific balance inquiry.

Turning to RTR's responses to Mr. Gish's purported QWR, RTR is unclear which sections of which particular document are referenced in the Complaint. Specifically, Mr. Gish references "pages #2, Sections #1 through #4," "Page #4 sections #1 through #3" and "Page #4 Debits and Credits section(s) #1 through #4." On July 20, 2018, RTR received a document from Mr. Gish entitled "Qualified Written Request." This document was two pages and did not contain any enumerated sections. On July 25, 2018, RTR received another document from Mr. Gish entitled "Request for Validation of Debt (FDCPA)," which was five pages in length. Pages 1 and 2 of the document are numbered sequentially, but the third page of the document bears the demarcation "10 | Page." Moreover, no section of either document is entitled "Debits and Credits." If Mr. Gish would like to provide the document he is referencing for RTR to review and respond to (if necessary), RTR would appreciate such clarification.

Finally, Mr. Gish is correct in that there is a slight discrepancy between the prior servicer's transfer letter and RTR's transfer letter. The prior servicer's transfer letter states that the transfer to RTR is effective as of August 1, 2011. Conversely, RTR's letter states that the transfer is effective as of August 3, 2011. RTR apologizes for this discrepancy but would like to assure Mr. Gish that his account was effectively transferred to RTR.

RTR hopes that this response is helpful to Mr. Gish. Please do not hesitate to contact me with any questions or follow-up requests; my email address is listed below.

Sincerely,

Samuel Trakhtenbroit
Staff Attorney
samuel.trakhtenbroit@rtrsolutions.com

# EXHIBIT "F"



**REAL TIME**
R E S O L U T I O N S.

09/28/2018

JEREMIAH J GISH                                          Balance Due: $44,613.70
9570 W MAPLEWOOD PL                                      Original Account Ending In: 9999
LITTLETON, CO 80123-3432

RTR File Number:        Q033792037
Regarding Property:     9570 W MAPLEWOOD PL
                        LITTLETON CO 80123

<u>NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF YOUR MORTGAGE LOAN</u>

Dear JEREMIAH J GISH:

This letter is to inform you that Real Time Resolutions, Inc. ("RTR") recently purchased your mortgage loan on 08/23/2018.
RTR will continue to manage your mortgage loan and will work directly with you. You should continue to send any
payments directly to REAL TIME RESOLUTIONS, INC. at P.O. BOX 731940, DALLAS, TX 75373-1940.

A sale of a mortgage loan is a standard part of the mortgage business for many of the nation's mortgage lenders. The sale
of your mortgage loan to RTR does not affect the terms or conditions of your loan documentation (such as your
mortgage, deed of trust, or promissory note) and this notice requires no action on your part. We recommend that you
keep a copy of this notice with your other mortgage documents. The transfer of ownership of your mortgage has not been
publicly recorded.

You may also contact RTR with any questions or issues by calling toll-free at 1-888-361-7152 or by going online to
realtimeresolutions.com.

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be
used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this
communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or
has been discharged and is provided for informational purposes only.

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with
the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from
taking any other action authorized by law to collect the debt. Real Time Resolutions, Inc. Colorado office location: 80
Garden Center, Building B, Ste 3, Broomfield, CO 80020; Phone (303) 920-4763. FOR INFORMATION ABOUT THE
COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COAG.GOV/CAR.

If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S.
Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov. This
account's current creditor is Real Time Resolutions, Inc..



**REAL TIME**
**R E S O L U T I O N S**

09/28/2018

**Partial Payment:** As the new lender and creditor of your mortgage loan, RTR would like to notify you as follows: any partial payments that you make will not immediately be applied to your account, but instead will be held in a separate suspense account for a period of 60 days. If you pay the remaining balance of a periodic payment during this 60 day period, the funds will then be fully applied as a periodic payment. If no additional funds or insufficient funds are received during this 60 day period, the suspense funds will be applied to your account in accordance with the terms of your loan documentation. If your loan documentation permits but does not require RTR to apply such funds first to interest, RTR will apply the partial payment first to the outstanding principal balance and then to interest and fees (although, RTR will not be obligated to waive any accrued interest). Please note that if the loan is sold again in the future, the new owner/lender may have a different policy.

Sincerely,

Real Time Resolutions, Inc.

1349 Empire Central Dr. Suite 150, Dallas, TX 75247-4029
Toll Free Customer Service 1-888-361-7152
Corporate Office Hours: Monday - Friday 8:30am - 5:30pm Central
www.payrtr.com

Page 2 of 2

# EXHIBIT "G"



**REAL TIME**
R E S O L U T I O N S.

**Account Statement**
08/09/2018

RTR File Number:          0033792037
Original Account Ending in: 9999
Payment Due Date:         09/01/2018
**Total Amount Due:        $44,613.70**
*If payment is received after 09/15/2018,*
*a $0.00 late fee may be charged.*

### Review Your Account Activity

**Account Information**

| | | |
|---|---|---|
| Regarding Property | 9570W MAPLEWOOD PL  LITTLETON, CO 80123 | |
| Outstanding Principal | $48,527.37 | |
| Escrow Balance | $0.00 | |
| Interest Rate through 03/01/2022 | 10.75000% | |
| Deferred Amount(s) | $0.00 | |
| Prepayment Penalty | No | |

If you are participating in a payment plan or any other resolution option, these amounts may not be reflected as part of this statement.

**Your Payment Breakdown**

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| | $0.00 | $0.00 |
| | $0.00 | $0.00 |
| Partial Payment (Suspense) | $0.00 | $0.00 |

| | Suspense Applied | Suspense Balance |
|---|---|---|
| Suspense Account Balance | $0.00 | $0.00 |

**Explanation of Amount Due**

| | |
|---|---|
| Principal | $63.26 |
| Interest | $398.82 |
| Escrow (Taxes and Insurance) | $0.00 |
| Regular Payment | $462.08 |
| Total Fees and Charges | $716.10 |
| Suspense Amount | -$0.00 |
| Partial Payment | -$0.00 |
| Past Due Amount | $43,435.52 |
| Total Amount Due | $44,613.70 |

Corporate Office Hours: Monday - Friday 8:30AM - 5:30PM Central | www.payrtr.com

1 of 2

Dept. 107565
PO Box 1259

RTR File Number:    0033792037
Payment Due Date:   09/01/2018

**Account Statement**
08/09/2018
RTR File Number: 0033792037

**\*Partial Payment, Suspense Account Balance, and Suspense Applied:** Any partial payments that you make are not applied to your account, but instead are held in a separate suspense account for a period of 60 days. If you pay the remaining balance of a periodic payment, the funds will then be applied as a periodic payment. If insufficient or no funds are received after 60 days, the suspense funds will be applied to your account in accordance with the terms of the applicable security instrument and promissory note. However, if the applicable contract permits RTR to apply such funds first to interest, RTR will waive such right for the partial payment (but not waive the accrued interest) and will apply the funds first to the outstanding principal balance and then to interest and fees.

## Review Your Transaction Activity (07/09/2018 to 08/08/2018)

| Date | Description | Charges | Payments |
|------|-------------|---------|----------|
| | No Account Activity Since Last Statement | N/A | N/A |

## Financial Hardship

If you are experiencing difficulties making your payments, call us today at 1-888-361-7152 or visit www.payrtr.com.

If you are experiencing financial difficulty and would like counseling or assistance, you can contact: U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

## Payment Information

- **Protect your credit** - We may report information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.
- **Unapplied/Partial Payments** - Any partial monthly payment that you make may not be applied to your account, but instead may be held in a separate suspense account until enough funds are received to equal a full payment, at which time the funds may then be applied to your loan.
- **Check Processing** - When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic funds transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.
- **Automatic Payments** - If you are currently set up on ACH, your payment of $462.08 will be processed on your scheduled due date.

... automatic stay of bankruptcy under Title 11 of ... informational purposes only and does not constitute an ... However, the creditor may still retain rights ...

eligible service members and ... determine if you are eligible ... contact us at the number listed ... under the SCRA. To find out how to ... on your SCRA and other rights, please

## Payment Options

Pay Online: www.payrtr.com   Pay by phone: 1-888-361-7152   Pay by mail: Real Time Resolutions, Inc.
P.O. BOX 731940, DALLAS, TX 75373-1940

This statement does not represent the payoff balance of your loan. For the payoff amount, or questions about your ...