

08/01/2018

JEREMIAH J GISH
9570 W MAPLEWOOD PL
LITTLETON CO 80123-3432

RTR File Number:                    2037

Dear JEREMIAH J GISH:

This letter is in regards to your correspondence in which you dispute the above-referenced account. We would like to thank you for taking the time to contact Real Time Resolutions, Inc. ("RTR"), and we appreciate your patience while awaiting our response. Your correspondence has been reviewed and we would like to provide you with the following information regarding your account:

- A copy of the Notice of Assignment, Sale or Transfer of Servicing Rights, dated 03/08/2007, which notified you that the servicing duties associated with the account were being transferred from Clarion Mortgage Capital to Aurora Loan Services effective 04/01/2007; to RTR effective 08/03/2011;
- A notification dated 07/01/2011 from Aurora Bank which notified you that the mortgage loan servicing would be transferred to their parent company, Aurora Bank, as well as a notification dated 07/15/2011 which notified you of the transfer from Aurora Bank FSB to RTR effective 08/01/2011;
- A copy of our Mortgage Collection, Processing, and Reporting Transfer Notification dated 08/04/2011, which notified you that the servicing duties associated with the account were transferred from Aurora/Lehman to RTR effective 08/03/2011;
- A copy of the signed promissory note, as well as a copy of the signed Deed of Trust, the instrument that secures the lien to the property commonly known as 9570 W Maplewood Place, Littleton, CO 80123;
- A copy of the Uniform Residential Loan Application;
- A copy of the HUD-1 Settlement Statement;
- Copies of the previous servicer's Customer Account Activity Statements and our Loan History Summary, itemizing the account's transaction history both prior to and while under our service;
- A copy of the signed Collection Agreement between the current investor, Aurora Loan Services LLC and RTR, effectively giving us the right to service the account on their behalf.

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. Real Time Resolutions, Inc. Colorado office location: 80 Garden Center, Building B, Ste 3, Broomfield, CO 80020; Phone (303) 920-4763. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COAG.GOV/CAR.

If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov. This account's current creditor is Aurora Commercial Corp..

Execution

## COLLECTION AGREEMENT

This COLLECTION AGREEMENT (this "Agreement") is made and entered into by and between AURORA LOAN SERVICES LLC ("Aurora"), a Delaware limited liability company, REAL TIME RESOLUTIONS, INC. ("Real Time"), a Texas corporation and Garrett Acquisitions, LLC ("Garrett"), a Nevada limited liability company, and dated as of _August 22_, 2005. Aurora, Real Time and Garrett may be collectively referred to herein as the "Parties."

### WITNESSETH:

WHEREAS, Aurora, among other activities, originates and services certain loans;

WHEREAS, Real Time is a corporation engaged in providing collection services to lenders, including recovery of deficiency and charge-off debt (the "Services");

WHEREAS, Garrett is a limited liability company that will hold title to certain loans for which Real Time provides Services in order to facilitate the collection of these loans;

WHEREAS, Aurora requires collection services with respect to certain loans and desires that Real Time provide such collection services in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

I.    Referral and Documentation. Subject to and in accordance with the terms of this Agreement, Real Time will provide Services with respect to those loans (the "Loans") for which Aurora, in its sole discretion, from time to time shall deliver a service order (each, a "Service Order"), which Service Order shall be in the form attached hereto as Exhibit A.

II.     Services To Be Performed. Real Time hereby agrees to provide Services to Garrett for the benefit of Aurora that are in accordance with (i) generally accepted standards within the collection services industry with respect to loans of the same type as the Loans and (ii) in accordance with all applicable laws, statutes, regulations and orders, including, but not limited to, the United States Bankruptcy Code, the Fair Debt Collection Practices Act, any other similar federal, state and local collection/consumer protection laws, rules and regulations, and consumer privacy laws. In connection with the Services, Real Time shall (i) decide, in its sole and absolute discretion, which Loans it deems worthy of pursuing for collection, and will notify Aurora of any Loans for which Real Time will not pursue collection, and shall immediately return all Loan files and supporting documentation and shall

-2-

reassign all of its rights and title in such Loans to Aurora by executing an Assignment substantially in the form attached hereto as Exhibit B, as applicable, (ii) subject to Section XI, have the right to retain local counsel, support personnel and other services necessary to effectuate collection of the debt and (iii) have the right to settle any and all claims arising from their Services for any amount exceeding

of the claim amount without approval from Aurora, including payment in kind, cash settlement, or a settlement with extended terms and conditions. For purposes of this Agreement, "settle" or "settlement" shall mean the negotiation with the borrower, co-borrower or unrelated third party or other entity for the receipt of collection, recovery, sales, litigation or other proceeds associated with the Loans that Aurora has assigned to Garrett, and the execution of assignments, loan modification agreements, loan forbearance agreements, releases or other documents to the borrower, co-borrowers or unrelated third parties or other entity in conjunction with such settlement, as described (but not limited) by that power of attorney outlined in Exhibit D. In consideration for their completion of Services pursuant to the terms hereof with respect to each Loan, Real Time shall be entitled to the fees set forth herein from the Gross Amount Collected and shall remit to Aurora the Net Amount Collected pursuant to the terms hereof. For the purposes of this Agreement, the "Gross Amount Collected" shall mean the entire amount collected from a borrower by Real Time within any particular period with respect to a Loan, prior to any deductions therefrom and the "Net Amount Collected" shall mean the amount collected from a borrower or other party or entity by Real Time within any particular period with respect to a Loan net of any fees retained by Real Time in accordance with the terms of this Agreement.

IN WITNESS THEREOF, the Parties have executed this Agreement on this $22^{rd}$ day of August, 2005.

REAL TIME RESOLUTIONS, INC.

By: _____

Name: Eric C. Green

Title: Chairman/CEO

AURORA LOAN SERVICES LLC

By: _____

Name: _____ Krapow MANGON

Title: _____ STF

GARRETT ACQUISITIONS, LLC.

By: _____

Name: Janice L. Conners

Title: Secretary

-14-

Exhibit D

SPECIAL AND LIMITED POWER OF ATTORNEY
IN FAVOR OF REAL TIME RESOLUTIONS, INC.

_August   22   ___, 200 5_

KNOW ALL MEN BY THESE PRESENTS:

Reference is hereby made to that certain Collection Agreement dated effective as of August __, 2005 (the "Agreement") among Real Time Resolutions, Inc., a Texas corporation ("Real Time"), Aurora Loan Services LLC ("Aurora"), a Delaware limited liability company, and Garrett Acquisitions, LLC ("Garrett"), a Nevada limited liability company, under which Aurora and Garrett agreed to enter into this Special and Limited Power of Attorney in favor of Real Time in connection with collection services to be provided by Real Time on behalf of Aurora and/or Garrett with respect to certain mortgage loans pursuant to the Agreement (the "Mortgage Loans").

The undersigned hereby appoints Real Time its true and lawful Attorney-in-Fact and in its name, place and stead and for its use and benefits hereby authorizes and empowers the aforesaid Attorney-in-Fact by and through any officers appointed by the Board of Directors of Real Time to perform the following with respect to the Mortgage Loans:

(a)     to make, execute, acknowledge, swear to, record, publish, file, procure or repair any agreement, document, certificate, instrument, file or other paper that pertains to such Mortgage Loans, including, without limitation, to endorse checks and promissory notes, to execute assignments and releases of loans or liens and other instruments, documents and papers, to possess and procure all lender, collateral, correspondent or business files which pertain to such mortgage loans, to dispense with the same and the proceeds thereof all in accordance with and subject to the terms of any rights, assignments, collection agreements, servicing agreements, powers of attorney agreements or other agreements with respect to which Aurora and Garrett is or was a direct or indirect party or beneficiary;

(b)     to endorse, execute or deliver any and all documents or instruments necessary to foreclose on any loan or lien, to maintain the lien created by any debt or security instrument, or any portion thereof, and to execute upon or newly create any and all modifications, forbearance agreements, waivers, loan or other documents or amendments to any documents, and any or all other instruments of satisfaction or cancellation or of partial or full release or discharge, or of subordination or modification, and all other comparable instruments, including, without limitation, the recording or filing with the appropriate public officials such documents or instruments and the endorsement or deposit of any instrument or monies in connection with the liquidation, foreclosure, collection, settlement, modification, forbearance or sale of such loan or lien, whether or not in bankruptcy.

IN WITNESS WHEREOF, Real Time, Aurora and Garrett have caused to be signed by duly authorized officers, this Special and Limited Power of Attorney effective as of the date set forth above.

REAL TIME RESOLUTIONS, INC.

By: _____

Name: Eric C. Green
Title: CEO/Chairman

AURORA LOAN SERVICES, LLC

By: _____

Name: _____
Title: _____

GARRETT ACQUISITIONS, LLC

By: _____

Name: Janice L. Conners
Title: Secretary

STATE OF TEXAS      §
                              §
COUNTY OF DALLAS    §

Before me, a Notary Public in and for the State of Texas, on this day personally appeared Eric C. Green, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he is the Chief Executive Officer of Real Time Resolutions, Inc., and that he executed the foregoing document in such capacity and with full authority in the premises.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this $22^{rd}$ day of August, 2005.



Notary Public in and for the State of Texas

STATE OF New York      §
                                 §
COUNTY OF New York    §

Before me, a Notary Public in and for the State of New York, on this day personally appeared Karen C. Manson known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he is the SVP of Aurora Loan Services, LLC and that he executed the foregoing document in such capacity and with full authority in the premises.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 23 day of August, 2005.

NEIL JAMES
Notary Public, State of New York
No.01JA6119964
Qualified in New York County
Commission Expires 12/13/2008

Notary Public in and for the State of New York

STATE OF TEXAS      §
                              §
COUNTY OF DALLAS    §

Before me, a Notary Public in and for the State of Texas, on this day personally appeared Janice L. Conners, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she is the Secretary of Garrett Acquisitions, LLC, and that she executed the foregoing document in such capacity and with full authority in the premises.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 22nd day of August, 2005.



Notary Public in and for the State of Texas

REPRESENTATION OF PRINTED DOCUMENT

# AURORA LOAN SERVICES

March 8, 2007

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

JEREMIAH J GISH
ANNE K GISH
2411 S GARLAND CT
LAKEWOOD CO 80227

RE:   Aurora
      Loan #      2037

Dear Borrower(s):

This letter is to notify you that the servicing of your mortgage loan is being assigned, sold or transferred from Clarion Mortgage Capital ("Clarion Mortgage Capital") to Aurora Loan Services ("Aurora"), effective April 01, 2007. The transfer of your mortgage loan to Aurora includes the right to collect payments from you.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present servicer is Clarion Mortgage Capital. If you have any questions relating to the transfer of servicing from your present servicer call Clarion Mortgage Capital's James R. Lewis at 303-843-0777. This is a collect call number.

Beginning April 01, 2007, your new servicer will be Aurora Loan Services. The business address and toll-free telephone numbers for your new servicer are:

| | | |
|---|---|---|
| Aurora Loan Services | Aurora Loan Services | Aurora Loan Services |
| Customer Service Department | Tax Department | Insurance Center |
| P.O. Box 1706 | P.O. Box 961233 | P.O. Box 2963 |
| Scottsbluff, NE 69363-1706 | Fort Worth, TX 76161-0233 | Phoenix, AZ 85062-2963 |
| 1 (800) 550-0508 | 1 (800) 550-0508 | 1 (800) 732-6578 |
| 6:00 A.M. to 7:00 P.M., MT | 8:00 A.M. to 5:00 P.M., MT | 6:00 A.M. to 6:00 P.M., MT |
| Monday through Friday | Monday through Friday | Monday through Friday |
| 8:00 A.M. to 12:00 P.M., MT | | |
| Saturday | | |

If you have any questions relating to the transfer of servicing to your new servicer, please call the numbers listed above. Please note the change of your loan number listed above and reference this loan number on all tax and insurance bills and any correspondence to Aurora.

The date that Clarion Mortgage Capital will stop accepting payments from you is March 31, 2007. The date that Aurora will begin accepting payments from you is April 01, 2007. Send all payments due on or after that date to Aurora Loan Services.

If you have been paying premiums for life, disability, accidental death insurance or other optional products, these policies will not transfer to Aurora. If you desire to continue your optional coverage, you can contact your optional insurance provider and discuss the possibility of remitting your premium directly.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

Aurora Loan Services
Attention: Customer Service Research
P.O. Box 1706
Scottsbluff, NE 69363-1706

### ***CONTINUED ON REVERSE SIDE***

DETACH AND RETURN BOTTOM PORTION

JEREMIAH J GISH
ANNE K GISH

Remit U.S. funds payable to Aurora Loan Services
Include your loan number on your check

| | ACCOUNT NUMBER | PAYMENT AMOUNT DUE |
|---|---|---|
| | 2037 | 462.08 |

Additional Principal

Additional Escrow

Late Charges/Fees

AURORA LOAN SERVICES
ATTN: CASHIERING
P.O. BOX 78111
PHOENIX AZ 85062-8111

Other

Amount Enclosed   $

☐ Please check here if mailing address, telephone number or email have recently changed and complete form on reverse side.

REPRESENTATION OF PRINTED DOCUMENT

 Aurora · Loan Services

 Aurora Bank FSB

July 1, 2011

JEREMIAH GISH
ANNE GISH
9570 W MAPLEWOOD PL
LITTLETON CO 80123-3432

Aurora Loan Services LLC Mortgage Loan Account Number: ██2037
Aurora Bank FSB Mortgage Loan Account Number: ██2037

Dear Customer(s):

Aurora Loan Services LLC (Aurora Loan Services) and Aurora Bank FSB (Aurora Bank), want to take this opportunity to say "Thank You" and "Welcome." Effective July 21, 2011, your mortgage loan servicing will be transferred from Aurora Loan Services to our parent company, Aurora Bank. This transfer does not affect the terms or conditions of your loan documents other than the terms directly related to the servicing of your loan. You will keep the same mortgage loan account number, the same access to the web site, www.myAuroraLoan.com, and the same service that you experienced previously with Aurora Loan Services. Also, additional information regarding this change can be found on www.myAuroraLoan.com in the FAQ section.

In an effort to make this transfer as smooth as possible for you, below please find a brief list of important updates. Please take a moment to review this information, as it may answer many of your questions.

**Regarding Your Mortgage Statements, Payments, and Optional Products**

1. Aurora Bank will start accepting payments on July 21, 2011. Starting on that date, all future or past due payments should be sent to Aurora Bank at the same address to which you previously sent payments (noted below). Please always include your Aurora Bank mortgage loan account number on your check and make it payable to: Aurora Bank FSB. Every month you will receive a detailed statement from Aurora Bank reflecting all your activity and key financial data. Your first monthly Mortgage Account Statement will arrive in August.

2. If you made payment(s) to Aurora Loan Services and any payment(s) was received on or after July 21, 2011, it will be processed by Aurora Bank. Because your mortgage loan account number and address to which you are sending your mortgage loan account payments are not changing, we don't anticipate any delay in processing your payment due to this transfer of servicing.

3. If Aurora Loan Services is currently automatically drafting your monthly payment from your bank account, Aurora Bank will continue this service for you. If you would like to discontinue your automatic drafting arrangement, please contact Aurora Bank at the phone number or address listed below.

4. If your payment is issued by a third party, or if you make your payment through a bill pay or online service, or if your mortgage payment is drafted biweekly through a third party provider, please take the appropriate action to change the name of your mortgage loan servicer from Aurora Loan Services to Aurora Bank. Because your payment address and account number are not changing, only the name needs to be changed with your bill pay/payment drafting service.

5. In January 2012, in addition to your monthly statement, you will receive an Annual Statement from Aurora Bank listing all payments on your account during 2011, including payments made to Aurora Loan Services. This Annual Statement will report the amount of interest and real estate taxes you paid during 2011.

6. If your monthly payment includes the collection of optional insurance premiums and/or membership fees, Aurora Bank will continue to collect your monthly premiums and/or membership fees and remit them to the appropriate provider(s).

7. If you previously provided information or documentation to Aurora Loan Services in support of your request for a possible loan modification under the federal government's Home Affordable Modification Program ("HAMP") or you have been established on a HAMP Trial Period Plan, Aurora Loan Services will be transferring all your documentation to Aurora Bank. Prior to July 21, 2011, you should continue to make your monthly Trial Period Plan payments to Aurora Loan Services. On or after July 21, 2011, you should make all Trial Period Plan payments to Aurora Bank, until such time that you are provided additional direction. Prior to July 21, 2011, approval decisions regarding your request for a possible HAMP loan modification will be made by Aurora Loan Services. On or after July 21, 2011, approval decisions regarding your HAMP loan modification request will be made by Aurora Bank.

8. If you previously provided information and documentation in support of your request for approval of other possible loss mitigation options (including a loan modification, repayment agreement, forbearance agreement, short sale, or deed-in-lieu of foreclosure) Aurora Loan Services will be transferring all of your documentation to Aurora Bank. Prior to July 21, 2011, approval decisions regarding your request for other possible loss mitigation options will be made by Aurora Loan Services. On or after July 21, 2011, approval decisions regarding your loss mitigation option request will be made by Aurora Bank.

**How to Contact Us**
Should you have questions, here are the applicable mailing addresses, toll-free numbers and hours of operation.
CONTACT YOUR PRESENT SERVICER, Aurora Loan Services LLC, PRIOR TO July 21, 2011:
**CUSTOMER SERVICE:**
1-800-550-0508

8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday, 8:00 a.m. to 9:00 p.m. (ET) Friday, 8:00 a.m. to 4:00 p.m. (ET) Saturday

CONTACT YOUR NEW SERVICER, Aurora Bank FSB, ON OR AFTER July 21, 2011:
**CUSTOMER SERVICE:**
1-800-550-0508

8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday, 8:00 a.m. to 9:00 p.m. (ET) Friday, 8:00 a.m. to 4:00 p.m. (ET) Saturday
www.myAuroraLoan.com

**SEND PAYMENTS TO:**
Aurora Bank FSB
P.O. Box 78111
Phoenix, AZ 85062-8111

**We Look Forward to Serving You**

We greatly appreciate the trust you have placed in us. Aurora Loan Services would like to extend a sincere "thank you" for the opportunity to serve you, and from Aurora Bank comes a genuine "welcome."

Sincerely,

Cassie Leet, VP Customer Service
Aurora Loan Services LLC

Sincerely,

Pam Pedersen, VP Loan Transfer
Aurora Bank FSB

Enclosure: Aurora Bank FSB Privacy Notice

Important Information on reverse side of this letter

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

When you provide a check, you authorize us to use information from your check to make a one-time electronic fund transfer from your account. If we use your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

**The following Notice is required by Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605)**
NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Aurora Loan Services LLC to Aurora Bank FSB, effective July 21, 2011.

The assignment, sale or transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. In this case, all necessary information is combined in this one notice.

Your present servicer is Aurora Loan Services LLC. If you have any questions relating to the transfer of servicing from your present servicer, please call Aurora Loan Services Customer Service Department toll free at 1-800-550-0508 8:00 a.m. to 11:00 p.m. (ET) Monday through Thursday 8:00 a.m. to 9:00 p.m. (ET) Friday 8:00 a.m. to 4:00 p.m. (ET) Saturday

Your new servicer will be Aurora Bank FSB. The business address for your new servicer is the same address you previously used for Aurora Loan Services and is:

> **Aurora Bank FSB**
> **ATTN: Customer Service**
> **P.O. Box 1706**
> **Scottsbluff, NE 69361-1706**

The toll-free telephone number of your new servicer is the same toll free number as you previously used for Aurora Loan Services and is 1-800-550-0508.   If you have any questions relating to the transfer of servicing to your new servicer call Customer Service at 1-800-550-0508.

The date that your present servicer will stop accepting payments from you is July 20, 2011. The date that your new servicer will start accepting payments from you is July 21, 2011. Send all payments due on or after that date to your new servicer.

The transfer of servicing rights may affect the terms of, or the continued availability of any optional insurance coverage or other membership products. If your monthly payment includes the collection of optional insurance premiums and/or membership fees Aurora Bank will continue to collect your monthly premiums and/or membership fees and remit them to the appropriate provider(s).

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to:

| PRIOR TO July 21, 2011: | ON OR AFTER July 21, 2011: |
|---|---|
| Aurora Loan Services LLC | Aurora Bank FSB |
| ATTN: CUSTOMER RESEARCH | ATTN: CUSTOMER RESEARCH |
| P.O. Box 1708 | P.O. Box 1706 |
| Scottsbluff, NE 69361-1706 | Scottsbluff, NE 69361-1706 |

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents. A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

REPRESENTATION OF PRINTED DOCUMENT

 Aurora Bank FSB

July 15, 2011

JEREMIAH GISH
ANNE GISH
9570 W MAPLEWOOD PL
LITTLETON CO 80123-3432

RE: Aurora Bank FSB
Loan #      2037

Dear Customer(s):

You are hereby notified that the servicing of your loan, that is, the right to collect payments from you, is being transferred from Aurora Bank FSB (Aurora Bank) to Real Time Resolutions Inc  effective August 1, 2011. The assignment, sale or transfer of the servicing of the loan does not affect any terms or conditions of the loan instruments, other than terms directly related to the servicing of your loan.

Questions relating to the transfer of servicing from Aurora Bank before August 1, 2011 should be directed to Aurora Bank Customer Service Department at 1-800-550-0508 between 8:00 AM and 11:00 PM, Eastern Time Monday through Thursday, 8:00 AM to 9:00 PM ET Friday, and 8:00 AM to 4:00 PM ET Saturday.

If you have questions relating to your loan after July 31, 2011, please contact Real Time Resolutions Inc's Customer Service.  The business address, toll-free telephone number and customer service hours for Real Time Resolutions Inc are:

Real Time Resolutions Inc
Customer Service
PO Box 36655
Dallas, TX 75235
877-469-7325
8:30 a.m. to 5:30 p.m., Monday through Friday

Effective August 1, 2011, please make your checks payable to Real Time Resolutions Inc and mail to the address below.  Aurora Bank will forward any payments or correspondence received after July 31, 2011 to Real Time Resolutions Inc for processing.  If your payments are currently paid through an automatic deduction from your checking or savings account, this service will be discontinued as of August 1, 2011.

Real Time Resolutions Inc

If you are currently making your loan payment through government allotment or have established a third party relationship to automatically make payments on your behalf, please ensure that (1) you take the necessary steps to advise them of your new loan number and (2) that the payee's name is changed to Real Time Resolutions Inc.

If you have been paying premiums for optional life, disability or accidental death insurance, these policies will not transfer to Real Time Resolutions Inc.

In January 2012, you will receive a year-end statement from Aurora Bank reflecting  loan activity occurring between January 1, 2011 and July 31, 2011.  A separate statement will be provided by  Real Time Resolutions Inc for activity between August 1, 2011 and December 31, 2011. Both statements will be mailed no later than January 31, 2012.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by Aurora Bank before its due date may not be treated by your new servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA gives you certain consumer rights.  If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request.  A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number and your reason for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute.  During this 60-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.  However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

Section 6 of RESPA also provides the damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section.  You should seek legal advice if you believe your rights have been violated.

Please retain this information with your loan documentation for future reference.  Aurora Bank appreciates the opportunity to provide service on your loan and for allowing us to be of service to you.

Sincerely,

Cassie Leet
Customer Service Manager



08/04/2011

> JEREMIAH J GISH & ANNE K GISH
> 9570 W MAPLEWOOD PL
> LITTLETON CO 80123-3432

Your new **REAL TIME RESOLUTIONS, INC.**  Loan Number: ▌▌▌▌**2037**
   Property:  9570W MAPLEWOOD PL
            LITTLETON, CO 80123

RE:  **Mortgage Collection, Processing, and Reporting Transfer Notification**

| | |
|---|---|
| Balance: | $ 48,527.37 |
| Payoff as of:  08/03/2011 | $ 52,872.23 |

Dear JEREMIAH J GISH :

You are hereby notified that the collection duties associated with your mortgage loan, that is the right to collect payments from you, is being transferred from Aurora/Lehman to **REAL TIME RESOLUTIONS, INC.** effective 08/03/2011.  This transfer of collection rights associated with your mortgage loan does not affect any terms or conditions of your mortgage instruments, other than the terms directly related to the collection of your payments.

**Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you make written request to this office within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.**

Please be aware that if you are currently in or have been discharged in bankruptcy, this letter is not an attempt to collect a debt. Moreover, in the event you are in or have been discharged in bankruptcy, this letter is not an attempt to foreclose on the real estate lien which still may encumber your home.  This correspondence is solely for informational purposes and is intended to provide you with notification of the above referred transfer of collection, processing, and reporting duties.  Due to your bankruptcy, you will not receive monthly billing statements unless we receive a written request from you.

Real Time Resolutions, Inc. specializes in the recovery and rehabilitation of secured and unsecured debts.  Real Time offers a staff of highly trained professionals dedicated to the successful restructure and repayment of consumer debt and understands that circumstances arise that may cause our customers financial difficulty.  We offer a variety of programs that may assist in resolving overwhelming debt. Depending on your personal and financial situation, you may qualify for one of the relief measures listed below.  Even if you don't feel one pertains to you, call us so we can discuss your situation and your options.

Refinance - Short Sale - Modification - Forbearance - Settlement

If you would like to contact us at any time about your loan, you may direct your inquires to us at the toll free number of 1-877-469 - REAL (7325) between the hours of 8:30 a.m. to 5:30 p.m., Central Standard Time, Monday through Friday.  If you would like to correspond with us by e-mail, please e-mail us at  **customerservice@rtresolutions.com.**

E:\Interling\rpt\RTR_HelloLtr.rpt

1750 Regal Row, Suite 120, Dallas, TX  75235-2287
Main 214-599-6363 • Toll Free 1-877-469-REAL (7325)
Hours of Operation:  Mon - Fri 8:30am - 5:30pm Central



08/04/2011                                                          **Loan Number:**          2037

Effective 08/03/2011, Aurora/Lehman will not accept payments, correspondence, or calls from you about your loan. Such payments, correspondence or calls will only be accepted and processed by **REAL TIME RESOLUTIONS, INC.** After 08/03/2011, your mortgage payments and correspondence should be directed to the following address:

| Correspondence | Payments |
|---|---|
| REAL TIME RESOLUTIONS, INC. | REAL TIME RESOLUTIONS, INC. |
| P.O. Box 36655 | Attn:  Payment Processing |
| Dallas, Texas  75235-1655 | P.O. Box 35888 |
|  | Dallas, Texas  75235-0888 |

If you are currently making your mortgage payment through pre-authorized draft with   Aurora/Lehman, please be advised that after 08/03/2011 that service will be CANCELLED.

Mortgage Accidental Death, Life, Disability,  or Optional insurance will NOT remain a part of your monthly payment, AND you will need to make arrangements to pay the premium for these services directly to the insurer to prevent cancellation.


You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605): During the 60-day period following the effective date of a transfer of loan servicing, a loan payment received by your previous servicer before its due date may not be treated by your new servicer a late and a late fee may not be imposed upon you. Section 6 of RESPA (12 U.S.C.) gives you certain consumer rights. If you send a "Qualified Written Request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of receipt of your request. A Qualified Written Request is written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that includes your name, account number and a statement of reasons for your belief that the account is in error or provides sufficient detail regarding other information sought by you. A "business day" is a day on which the business entity is open to the public for carrying on substantially all of its business functions. No later that 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with written clarification regarding any dispute. During the 60-business-day period, your servicer may not provide any information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents. All Qualified Written Requests must be mailed to:

> REAL TIME RESOLUTIONS, INC.
> Attn:  Qualified Written Requests
> P.O. Box 35888
> Dallas, Texas  75235-0888

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that section. You should seek legal advice if you believe your rights have been violated.

E:\Interling\apt\RTR_Hello1.tr.rpt

1750 Regal Row, Suite 120, Dallas, TX  75235-2287
Main 214-599-6363 • Toll Free 1-877-469-REAL (7325)
Hours of Operation:  Mon - Fri 8:30am - 5:30pm Central



08/04/2011                                                                    **Loan Number:** ██████2037

If you are not in bankruptcy, or have not been previously discharged in bankruptcy, you will soon receive monthly billing statements from us. In the unlikely event that you do not receive a monthly billing statement, you should write your loan number, referenced above, on your check and mail it to us at the address referenced previously.

The following notices are required by the Fair Debt Collection Practices Act, and are primarily applicable to customers who are not in or have not been discharged in a bankruptcy:

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

REAL TIME RESOLUTIONS, INC.
Toll Free:   1-877-469-REAL (7325)

For information about the Colorado Fair Debt Collection Practices Act, See www.coloradoattorneygeneral.gov/ca.
In-State Office: Colorado Manager, Inc. 80 Garden Center, Suite 3 Broomfield, CO 80020 ph: (303) 920-4763
A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

E:\Interling\rpt\RTR_HelloLtr.rpt

1750 Regal Row, Suite 120, Dallas, TX  75235-2287
Main 214-599-6363 • Toll Free 1-877-469-REAL (7325)
Hours of Operation:   Mon - Fri 8:30am - 5:30pm Central



MIN: ▮▮▮▮▮▮▮▮▮▮                    Loan Number: ▮▮▮▮▮▮▮▮

# NOTE

THIS NOTE IS A CONTRACT FOR A SHORT-TERM LOAN. THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. YOU HAVE THE RIGHT TO REFINANCE THE AMOUNT OF THAT PAYMENT AT THE TIME IT IS DUE AT THE LENDER'S PREVAILING RATES IF YOU MEET THE LENDER'S NORMAL CREDIT STANDARDS AND IF THE LENDER IS, AT THAT TIME, IN THE BUSINESS OF MAKING SUCH LOANS. YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| FEBRUARY 16, 2007 | GREENWOOD VILLAGE | COLORADO |
|---|---|---|
| Date | City | State |

9570 WEST MAPLEWOOD PLACE, LITTLETON, COLORADO 80123
Property Address                    City                    State          Zip Code

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $49,500.00          (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION                    .
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of          10.750 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $462.07          .
I will make my payments on the  1st          day of each month beginning on          APRIL 1,          ,
2007          . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on MARCH 1, 2022          ,
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at   6530 SOUTH YOSEMITE STREET #300,
GREENWOOD VILLAGE, COLORADO 80111

or at a different place if required by the Note Holder.

## 4.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of  10 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be   5 . 000   % of my overdue payment.  I will pay this late charge only once on any late payment.

(B)  Default

If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.

(C)  Notice From Note Holder

If I am in default for 10 days, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 20 days after the date on which the notice is mailed to me or if it is not mailed, 20 days after the date on which it is delivered to me.

(D)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its reasonable costs and expenses to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 5.  THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated FEBRUARY 16, 2007      , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

## 6.  BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in a letter that I am doing so.  A prepayment of all of the unpaid principal is known as a "full prepayment."  A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.  I may make a full prepayment at any time.  If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due.  The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7.  BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things.  Those things are:  (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest").  Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights.  These persons are known as "guarantors, sureties and endorsers."

## 8.  GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above.  A notice will be delivered or mailed to me at a different address



if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_____ (Seal)
JEREMIAH J. GISH            -Borrower

_____ (Seal)
ANNE K. GISH               -Borrower

_____ (Seal)
                           -Borrower

**Lehman Brothers Bank, FSB**

_____ (Seal)
PAYLE TO ORDER OF          -Borrower

LEAMAT P  . CARGS INC.

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

Pay To The Order Of

Without Recourse
Lehman Brothers Bank, FSB

By: _____
Leo C. Trautman, Jr.
Vice President

PAY TO THE ORDER OF
LEHMAN BROTHERS BANK FSB

WITHOUT RECOURSE THIS 10 DAY OF
February , 20 07
CLARION MORTGAGE CAPITAL, INC.
BY: Katherine R. Wierda

Katherine R. Wierda
Assistant Treasurer

MIN: ▮▮▮▮                                    Loan Number: ▮▮▮▮

# BALLOON NOTE ADDENDUM
# SECOND MORTGAGE

This Balloon Note Addendum is made this 16th day of FEBRUARY, 2007         and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION
(the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date end covering the property described in the Security Instrument and located at
9570 WEST MAPLEWOOD PLACE, LITTLETON, COLORADO 80123

(the "Property").

Additional Covenants. Notwithstanding anything to the contrary set forth in the Note, Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

If, on MARCH 1, 2022         I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

All other provisions of the Note are unchanged and remain in full force and effect.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JEREMIAH J. GISH        -Borrower        ANNE K. GISH          -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                              -Borrower

DocMagic ℰℱ☆☆☆☆☆ 800-849-1362
www.docmagic.com

2007019433        02/20/2007 09:41:26
PGS    11     $56.00   DF $0
Electronically Recorded Jefferson County CO
Pam Anderson, Clerk and Recorder    T01000 N

After Recording Return To:
CLARION MORTGAGE CAPITAL, INC.
6530 SOUTH YOSEMITE STREET #300
GREENWOOD VILLAGE, COLORADO 80111
Loan Number:

———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

MIN:

THIS DEED OF TRUST is made on, FEBRUARY 16, 2007          among the Grantor,
JEREMIAH J. GISH AND ANNE K. GISH AS JOINT TENANTS

(herein "Borrower"),
the Public Trustee of  JEFFERSON          County (herein "Trustee"), and the Beneficiary, Mortgage
Electronic Registration Systems, Inc. ("MERS"), which is acting solely as nominee for Lender (as hereinafter defined)
and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address
and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION
is organized and existing under the laws of  COLORADO          and has an address of

6530 SOUTH YOSEMITE STREET #300, GREENWOOD VILLAGE, COLORADO
80111                                                    (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
JEFFERSON     , State of Colorado:
LOT 3, BLOCK 26, KIPLING VILLAS, COUNTY OF JEFFERSON, STATE OF
COLORADO.



COLORADO - SECOND MORTGAGE - 1/80
3808 - AS AMENDED FOR MERS                Page 1 of 8                DocMagic eForms 800-649-1362
                                                                    www.docmagic.com

After Recording Return To:
CLARION MORTGAGE CAPITAL, INC.
6530 SOUTH YOSEMITE STREET #300
GREENWOOD VILLAGE, COLORADO 80111
Loan Number:

——— [Space Above This Line For Recording Data] ———

# DEED OF TRUST

MIN:

THIS DEED OF TRUST is made on, FEBRUARY 16, 2007      among the Grantor,
JEREMIAH J. GISH AND ANNE K. GISH AS JOINT TENANTS

(herein "Borrower"),
the Public Trustee of JEFFERSON      County (herein "Trustee"), and the Beneficiary, Mortgage
Electronic Registration Systems, Inc. ("MERS"), which is acting solely as nominee for Lender (as hereinafter defined)
and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address
and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION
is organized and existing under the laws of  COLORADO      and has an address of

6530 SOUTH YOSEMITE STREET #300, GREENWOOD VILLAGE, COLORADO
80111      (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
JEFFERSON    , State of Colorado:
LOT 3, BLOCK 26, KIPLING VILLAS, COUNTY OF JEFFERSON, STATE OF
COLORADO.



COLORADO - SECOND MORTGAGE - 1/80
3B06 - AS AMENDED FOR MERS      Page 1 of 8      DocMagic eForms 800-649-1362
www.docmagic.com

which has the address of 9570 WEST MAPLEWOOD PLACE

                                            [Street]

LITTLETON                          , Colorado   80123              (herein "Property Address");

        [City]                                  [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property."

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated FEBRUARY 16, 2007          and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 49,500.00          , with interest thereon, providing for periodic installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on MARCH 1, 2022          ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Deed of Trust.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay

said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenace of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

· ᐃ · ᐧ ·

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 20 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of such notice to Borrower as provided in paragraph 12 hereof. Trustee shall record a copy of such notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by applicable law and shall mail copies of such notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time when the purchaser will be entitled to Trustee's deed thereto. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and Trustee's expenses and withdrawal fee; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under

paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to release this Deed of Trust and shall produce for Trustee duly cancelled all notes evidencing indebtedness secured by this Deed of Trust. Trustee shall release this Deed of Trust without further inquiry or liability. Borrower shall pay all costs of recordation, if any, and shall pay the statutory Trustee's fees.

21. **Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

22. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☒ Balloon Rider  ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 7 of this Deed of Trust.

_____ (Seal)
JEREMIAH J. GISH        -Borrower

_____ (Seal)
ANNE K. GISH            -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

Witness:

Witness:

_____

_____

COLORADO - SECOND MORTGAGE - 1/80
3806 - AS AMENDED FOR MERS            Page 7 of 8

DocMagic €Ruaxxxs 800-849-1362
www.docmagic.com

State of Colorado
County of JEFFERSON

The foregoing instrument was acknowledged before me this
by JEREMIAH J. GISH AND ANNE K. GISH

Signature of Person Taking Acknowledgment

| | ANNETTE M. BENNET |
| | NOTARY PUBLIC |
| Title | STATE OF COLORADO |
| | My Commission Expires 3/2/2010 |

Serial Number, if any

(Seal)                    My commission expires:

MIN: ▓▓▓▓▓▓▓▓▓▓▓▓         Loan Number: ▓▓▓▓▓▓▓▓

# BALLOON RIDER
## SECOND MORTGAGE

This Balloon Rider is made this   16th  day of FEBRUARY, 2007         and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at 9570 WEST MAPLEWOOD PLACE, LITTLETON, COLORADO 80123

(the "Property").

Additional Covenants. Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)          _____ (Seal)
JEREMIAH J. GISH        -Borrower       ANNE K. GISH            -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                               -Borrower

DocMagic €Forms 800-649-1362
www.docmagic.com

Loan Number: ▮▮▮▮▮▮▮▮

———————————[Space Above This Line For Recording Data]———————————

# BALLOON RIDER

THIS BALLOON RIDER is made this  16th day of  FEBRUARY,  2007  , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to CLARION MORTGAGE CAPITAL, INC., A COLORADO CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

9570 WEST MAPLEWOOD PLACE, LITTLETON, COLORADO 80123
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS.  In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS NOTE IS A CONTRACT FOR A SHORT-TERM LOAN. THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. YOU HAVE THE RIGHT TO REFINANCE THE AMOUNT OF THAT PAYMENT AT THE TIME IT IS DUE AT THE LENDER'S

PREVAILING RATES IF YOU MEET THE LENDER'S NORMAL CREDIT STANDARDS AND IF THE LENDER IS, AT THAT TIME, IN THE BUSINESS OF MAKING SUCH LOANS. YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____  2-16-07      _____  2-16-07
Borrower JEREMIAH J. GISH    Date      Borrower ANNE K. GISH       Date


_____  _____      _____  _____
Borrower                    Date      Borrower                    Date


_____  _____      _____  _____
Borrower                    Date      Borrower                    Date

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower" as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below)

| Borrower | | | | Co-Borrower | | | |
|---|---|---|---|---|---|---|---|

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for | ☐ VA<br>☐ FHA | ☒ Conventional<br>☐ USDA/Rural Housing Service | ☐ Other (explain) | | Agency Case Number | | Lender Case Number |
|---|---|---|---|---|---|---|---|
| Amount<br>$ 49,500 | Interest Rate<br>10.750 % | No. of Months<br>360/180 | Amortization Type | ☒ Fixed Rate<br>☐ GPM | ☐ Other (explain)<br>☐ ARM (type) | | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 9870 W Maplewood Pl, Littleton, CO 80123   County  Jefferson | 1 |
| Legal Description of Subject Property (attach description if necessary)<br>See Preliminary Title Report | Year Built |

| Purpose of Loan | ☒ Purchase  ☐ Construction  ☐ Other (explain)<br>☐ Refinance  ☐ Construction-Permanent | Property will be<br>☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
|---|---|---|---|---|---|
| | $ | $ | | Cost $ | |

| Title will be held in what Name(s)<br>Jeremiah J Gish<br>Anne K Gish | Manner in which Title will be held<br>Joint tenants | Estate will be held in<br>☒ Fee Simple<br>☐ Leasehold (show expiration date) |
|---|---|---|
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)<br>Checking/Savings | | |

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable)<br>Jeremiah J Gish | Co-Borrower's Name (include Jr. or Sr. if applicable)<br>Anne K Gish |
|---|---|

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School<br>16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School<br>16 |
|---|---|---|---|---|---|---|---|

| ☒ Married  ☐ Unmarried (include single, divorced, widowed)<br>☐ Separated | Dependents (not listed by Co-Borrower)<br>no 2   ages 5, 3 | ☒ Married  ☐ Unmarried (include single, divorced, widowed)<br>☐ Separated | Dependents (not listed by Borrower)<br>no 0   ages |
|---|---|---|---|
| Present Address (street, city, state, ZIP)  ☐ Own ☒ Rent 2 No. Yrs<br>2411 S  Garland Ct<br>Lakewood, CO 80227 | | Present Address (street, city, state, ZIP)  ☐ Own ☒ Rent 2 No. Yrs<br>2411 S  Garland Ct<br>Lakewood, CO 80227 | |
| Mailing Address, if different from Present Address | | Mailing Address, if different from Present Address | |

If residing at present address for less than two years, complete the following

| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ____ No. Yrs | | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ____ No. Yrs | |
|---|---|---|---|
| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ____ No. Yrs | | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ____ No. Yrs | |

Page 1 of 5

Borrower _____
Co-Borrower _____

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis, otherwise separate Statements and Schedules are required. If the Co Borrower section was completed about a non applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also    Completed ☑ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | | Liabilities and Pledged Assets  List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges etc. Use continuation sheet if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|---|
| Cash deposit toward purchase held by RBI/Raco Real Estate - $2,500 | $ | | **LIABILITIES** | | | |
| List checking and savings accounts below | | | Name and address of Company  SECURITY SERVICE FCU | | $ Payment/Months | $ |
| Name and address of Bank, S&L  or Credit Union JP Morgan Chase | | | | | | |
| | | | Acct  no | | 375 /55 | 18,108 |
| Acct no | $ | 8 | Name and address of Company  NELNET LNS | | $ Payment/Months | $ |
| Name and address of Bank  S&L  or Credit Union JPMorgan Chase Bank | | | | | | |
| | | | Acct  no | | 58 /56 | 5,453 |
| Acct no | $ | 166 | Name and address of Company  NELNET LNS | | $ Payment/Months | $ |
| Name and address of Bank  S&L or Credit Union JPMorgan Chase Bank | | | | | | |
| | | | Acct  no | | 60 /56 | 5,376 |
| Acct no | $ | 21 | Name and address of Company  WASH MUTUAL/PROVIDIAN  PO BOX 660509  DALLAS, TX 75266 | | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | | | | | |
| | | | Acct no | | 73 /0 | 2,914 |
| Life insurance net cash value | $ | | Name and address of Company  HSBC NV  PO BOX 19360  SALINAS, CA 93901 | | $ Payment/Months | $ |
| Face amount  $ | | | | | | |
| Subtotal Liquid Assets | $ | 195 | Acct no | | 27 /0 | 2,881 |
| Real estate owned (enter market value from schedule of real estate owned) | $ | | Name and address of Company  WASH MUTUAL/PROVIDIAN  PO BOX 660509  DALLAS, TX 75266 | | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | 20,193 | | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | Acct  no | | 61 /0 | 2,417 |
| Automobiles owned (make and year) | $ | | Alimony/Child Support/Separate Maintenance Payments Owed to | | $ | |
| Other Assets (itemize) | $ | | Job-Related Expense (child care  union dues  etc ) | | $ | |
| | | | Total Monthly Payments | | $ | 995 |
| **Total Assets a.** | $ | 29,388 | Net Worth (a minus b) | => | $ -28,467 | Total Liabilities b | $ | 46,855 |

Schedule of Real Estate Owned (if additional properties are owned  use continuation sheet)

| Property Address (enter S if sold  PS if pending  sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance Maintenance Taxes & Misc | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| **Totals** | | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s)

Alternate Name                    Creditor Name                    Account Number

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower | Agency Case Number |
| | Jeremiah J Gish | |
| | Co-Borrower | Lender Case Number |
| | Anne K Gish | |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L or Credit Union | | Name and address of Company TARGET NB PO BOX 673 MINNEAPOLIS, MN 55440 | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 53/0 | 2,134 |
| Name and address of Bank, S&L or Credit Union | | Name and address of Company AMEX PO BOX 297871 FORT LAUDERDALE, FL 33329 | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 58/0 | 1,936 |
| Name and address of Bank, S&L or Credit Union | | Name and address of Company HSBC NV | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 47/0 | 1,684 |
| Name and address of Bank, S&L or Credit Union | | Name and address of Company GEMB/WALMART DC | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 55/0 | 998 |
| Name and address of Bank, S&L or Credit Union | | Name and address of Company TARGET NB PO BOX 673 MINNEAPOLIS, MN 55440 | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 24/0 | 887 |
| Name and address of Bank, S&L or Credit Union | | Name and address of Company SECURITY SERVICE FCU | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 60/15 | 848 |
| Name and address of Bank, S&L or Credit Union | | Name and address of Company GEMB/CARE CREDIT PO BOX 276 DAYTON, OH 45401 | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 11/0 | 369 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001 et seq

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

Fannie Mae Form 1003  07/05
CALYX Form 1003 LnapSest.frm 8/05

Page 6 of 6

Freddie Mac Form 65  0/05

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower | Jeremiah J Gish | Agency Case Number |
|---|---|---|---|
| | Co-Borrower | Anne K Gish | Lender Case Number |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company WFNNB/eXPRESS P O BOX 182782 COLUMBUS, OH 43218 | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 15/0 | 322 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CHASE | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 10/0 | 288 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company WFNNB/VICTORIAS SECRET | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 10/0 | 207 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company COLLECTION COMPANY OF 700 LONGWATER DR NORWELL, MA 02061 **Collection** | $ Payt /Mos | $ |
| Acct no | $ | Acct No | 0/0 | 13 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt /Mos | $ |
| Acct no | $ | Acct No | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt /Mos | $ |
| Acct no | $ | Acct No | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt /Mos | $ |
| Acct no | $ | Acct No | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001 et seq

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## VII DETAILS OF TRANSACTION

| | |
|---|---|
| a Purchase price | $ 247,500 00 |
| b Alterations, improvements, repairs | |
| c Land (if acquired separately) | |
| d Refinance (incl debts to be paid off) | |
| e Estimated prepaid items | 231 72 |
| f Estimated closing costs | 939 95 |
| g PMI MIP Funding Fee | |
| h Discount (if Borrower will pay) | |
| i Total costs (add items a through h) | 248,680 67 |
| j Subordinate financing | |
| k Borrower's closing costs paid by Seller | 5,900 00 |
| l Other Credits (explain) Cash Deposit on sales contract - $2,900 | |
| New First Mortgage | 198,000 00 |
| New 1st Mtg Closing Costs | -4,376 77 |
| m Loan amount (exclude PMI, MIP, Funding Fee financed) | 48,500 00 |
| n PMI MIP Funding Fee financed | |
| o Loan amount (add m & n) | 48,500 00 |
| p Cash from/to Borrower (subtract j, k, l & o from i) | 38 44 |

## VIII DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation

| | Borrower | | Co Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☑ |
| b Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☑ |
| c Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☑ |
| d Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☑ |
| e Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☑ |
| f Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ | ☑ | ☐ | ☑ |
| g Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☑ |
| h Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☑ |
| i Are you a co maker or endorser on a note? | ☐ | ☑ | ☐ | ☑ |
| j Are you a U S citizen? | ☑ | ☐ | ☑ | ☐ |
| k Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☑ |
| l Do you intend to occupy the property as your primary residence? If "Yes" complete question m below | ☑ | ☐ | ☑ | ☐ |
| m Have you had an ownership interest in a property in the last three years? | ☐ | ☑ | ☐ | ☑ |
| (1) What type of property did you own principal residence (PR) second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18 United States Code Sec 1001 et seq, (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application (3) the property will not be used for any illegal or prohibited purpose or use (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan (5) the property will be occupied as indicated in this application (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application whether or not the Loan is approved (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property and (11) my transmission of this application as an "electronic record" containing my "electronic signature" as those terms are defined in applicable Federal and/or state laws (excluding audio and video recordings) or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in the application or obtain any information or data relating to the Loan, for any legitimate purpose through any source including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws You are not required to furnish this information, but are encouraged to do so The law provides that a Lender may not discriminate either on the basis of this information or on whether you choose to furnish it If you furnish the information please provide both ethnicity and race For race you may check more than one designation If you do not furnish ethnicity, race or sex, under Federal regulations this lender is required to note the information on the basis of visual observation and surname if you have made this application in person If you do not wish to furnish the information please check the box below (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for )

| BORROWER ☑ I do not wish to furnish this information | | CO BORROWER ☑ I do not wish to furnish this information | |
|---|---|---|---|
| Ethnicity ☐ Hispanic or Latino ☑ Not Hispanic or Latino | | Ethnicity ☐ Hispanic or Latino ☑ Not Hispanic or Latino | |
| Race ☐ American Indian or Alaska Native ☐ Native Hawaiian or Other Pacific Islander ☐ Asian ☑ White ☐ Black or African American | | Race ☐ American Indian or Alaska Native ☐ Native Hawaiian or Other Pacific Islander ☐ Asian ☑ White ☐ Black or African American | |
| Sex ☐ Female ☑ Male | | Sex ☑ Female ☐ Male | |

| To be Completed by Interviewer This application was taken by ☐ Face to face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Name (print or type) Tenby Dahman | Name and Address of Interviewer's Employer Clarion Mortgage Capital 6530 S Yosemite St, Ste 300 Greenwood Village, CO 80111 |
|---|---|---|
| | Interviewer's Signature | Date |
| | Interviewer's Phone Number (incl area code) | (P |

Fannie Mae Form 1003  07/05
CALYX Form Loanappe.frm 05/05

Page 4 of 5

Freddie Mac Form 65  07/05

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower<br>Jeremiah J Gish | Agency Case Number |
|---|---|---|
| | Co-Borrower<br>Anne K Gish | Lender Case Number |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

Freddie Mac Form 65   07/05
CALYX Form LnapScnt frm 08/05

Page 5 of 5

Fannie Mae Form 1003   07/05

| A  U S DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | | B  TYPE OF LOAN | | | OMB No | |
|---|---|---|---|---|---|---|
| SETTLEMENT STATEMENT | | 1 ☐ FHA | 2 ☐ FMHA | 3 ☒ CONV UNINS | | |
| Title America | | 4 ☐ VA | 5 ☐ CONV INS | | | |
| 300 Union Blvd #675 | | 6 ESCROW FILE NUMBER | | | 7 LOAN NUMBER | |
| Lakewood, CO 80228 | 5 | | | | | |
| | | 8 MORTGAGE INSURANCE CASE NUMBER | | | | |

FINAL

C NOTE  This form is furnished to give you a statement of actual settlement costs.  Amounts paid to and by the settlement agent are shown.  Items marked "(P O C )" were paid outside the closing, they are shown here for informational purposes and are not included in the totals

| D NAME OF BORROWER | Jeremiah J Gish and Anne K Gish |
|---|---|
| ADDRESS OF BORROWER | 2411 South Garland Court<br>Lakewood, CO 80227 |
| E NAME OF SELLER | Kenneth A Blenker and Christine L Blenker |
| ADDRESS OF SELLER | 9570 West Maplewood Place<br>Littleton, CO 80123 |
| F NAME OF LENDER | Clarion Mortgage |
| ADDRESS OF LENDER | 8530 South Yosemite Street, #300<br>Greenwood Village, CO 80111 |
| G PROPERTY LOCATION | 9570 West Maplewood Place<br>Littleton, CO 80123<br>Jefferson 000592203040<br>LOT 3 BLK 28 KIPLING VILLAS |
| H SETTLEMENT AGENT | Title America |
| PLACE OF SETTLEMENT | 300 Union Blvd #675, Lakewood, CO 80228 |
| I SETTLEMENT DATE | 02/16/2007 |

PRORATION DATE 02/16/2007   FUNDING DATE 02/16/2007

| J | SUMMARY OF BORROWER'S TRANSACTION | | K | SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|---|---|
| 100. Gross Amount Due From Borrower: | | | 400. Gross Amount Due To Seller: | | |
| 101 Contract Sales Price | | 247,500 00 | 401 Contract Sales Price | | 247,500 00 |
| 102 Personal Property | | | 402 Personal Property | | |
| 103 Settlement charges to Borrower (line 1400) | | 5,018 60 | 403 | | |
| 104 | | | 404 | | |
| 105 | | | 405 | | |
| Adjustments For Items Paid By Seller In Advance | | | Adjustments For Items Paid By Seller In Advance | | |
| 106 City/Town Taxes | | | 406 City/Town Taxes | | |
| 107 County Taxes | | | 407 County Taxes | | |
| 108 Assessments | | | 408 Assessments | | |
| 109 | | | 409 | | |
| 110 | | | 410 | | |
| 111 | | | 411 | | |
| 112 | | | 412 | | |
| 113 | | | 413 | | |
| 114 | | | 414 | | |
| 115 | | | 415 | | |
| 120 Gross Amount Due from borrower | | 252,518 60 | 420 Gross Amount Due to Seller | | 247,500 00 |
| 200. Amounts Paid by or in behalf of Borrower | | | 500. Reductions In Amount Due To Seller. | | |
| 201 Deposit or earnest money | | 2,500 00 | 501 Excess deposit (see instructions) | | |
| 202 Principal amount of new loan(s) | | 198,000 00 | 502 Settlement charges to Seller (line 1400) | | 14,952 62 |
| Clarion Mortgage | | 49,500 00 | | | |
| 203 Existing loan(s) taken subject to | | | 503 Existing loan(s) taken subject to | | |
| 204 | | | 504 Payoff of first mortgage loan | | 164,119 23 |
| 205 | | | 505 Payoff of second mortgage loan | | |
| 206 Seller pd closing costs | | 4,738 40 | 506 Seller pd closing costs | | 4,738 40 |
| 207 | | | 507 | | |
| 208 | | | 508 | | |
| 209 | | | 509 | | |
| Adjustments For Items Unpaid By Seller | | | Adjustments For Items Unpaid By Seller | | |
| 210 City/Town Taxes | | | 510 City/Town Taxes | | |
| 211 County Taxes 01/01/07 - 02/16/07 | | 264 36 | 511 County Taxes 01/01/07-02/16/07 | | 264 36 |
| 212 Assessments | | | 512 Assessments | | |
| 213 Sewer 01/01/07-02/16/07 | | 17 84 | 513 Sewer 01/01/07-02/16/07 | | 17 84 |
| 214 | | | 514 | | |
| 215 | | | 515 | | |
| 216 | | | 516 | | |
| 217 | | | 517 | | |
| 218 | | | 518 | | |
| 219 | | | 519 | | |
| 220 Total Paid By/For Borrower | | 255,018 60 | 520 Total Reductions In Amount Due Seller | | 184,090 45 |
| 300. Cash at Settlement from/to Borrower | | | 600 Cash at Settlement to/from Seller. | | |
| 301 Gross amount due from Borrower (line 120) | | 252,518 60 | 601 Gross amount due to Seller (line 420) | | 247,500 00 |
| 302 Less amount paid by/for Borrower (line 220) | | 255,018 60 | 602 Less reductions in amount due Seller (line 52 | | 184,090 45 |
| 303 Cash TO Borrower | | 2,500 00 | 603 Cash TO Seller | | 63,409 55 |

Hudc rpt (01/20/2006)

| ESCROW FILE NUMBER | | OMB No |
|---|---|---|

## L. SETTLEMENT CHARGES

| 700. Total Sales/Broker's Commission | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| Based on Price $247,500.00 @ 3 8¾ = 9,405 00 | | | |
| Division of Commission (line 700) follows | | | |
| 701 $ 2,475.00 to RBURACO Real Estate & Develop | | | |
| 702 $ 6,930.00 to Re/Max Professionals | | | |
| $ 0.00 to | | | |
| 703 Commission paid at settlement | | | 9,405 00 |
| 704 Admin Fee to Re/Max Professionals | | 185 00 | |
| 800 Items Payable in Connection With Loan | | | |
| 801 Loan Origination Fee | | | |
| 802 Loan Discount Fee | | | |
| 803 Appraisal Fee to Rewards & Associates | | 325 00 | |
| 804 Credit Report to Clanon Mortgage | | 23 50 | |
| 805 Lenders Inspection Fee | | | |
| 806 Mortgage Insurance Application Fee | | | |
| 807 Assumption Fee | | | |
| 808 Flood Determination to Clanon Mortgage | | 19 00 | |
| 809 Tax Service Fee to Clanon Mortgage | | 80 00 | |
| 810 Underwriting Fee to Clanon Mortgage | | 250 00 | |
| 811 Processing Fee to Lilian Ochs | | 400 00 | |
| 812 Doc Prep Fee to Loan Docs, Inc | | 190 00 | |
| 813 MERS Registration to Clanon Mortgage | | 4 95 | |
| 814 Flood Determination-2nd Mtg to Clanon Mortgage | | 19 00 | |
| 815 Underwriting Fee-2nd Mtg to Clanon Mortgage | | 150 00 | |
| 816 Processing Fee-2nd Mtg to Clanon Mortgage | | 75 00 | |
| 817 Doc Prep Fee-2nd Mtg to Loan Docs Inc | | 100 00 | |
| 818 MERS Registration-2nd Mtg to Clanon Mortgage | | 4 95 | |
| 900. Items Required By Lender To Be Paid In Advance: | | | |
| 901 Interest from 02/16/07 to 03/01/07 @$37 2945/day | | 484 83 | |
| 902 Mortgage Insurance Premium | | | |
| 903 Hazard Insurance Premium for 1 Year(s) to ANPAC | | 799 00 | |
| 904 2nd Mtg Int @ $14 5788/day to Clanon Mortgage | | 189 52 | |
| 905 | | | |
| 1000 Reserves Deposited With Lender. | | | |
| 1001 Hazard Insurance 2 months @$65 75 per month | | 131 50 | |
| 1002 Mortgage Insurance | | | |
| 1003 City Property Taxes | | | |
| 1004 County Property Taxes 2 months @$174 80 per month | | 349 60 | |
| 1005 Annual Assessments | | | |
| 1006 | | | |
| 1007 | | | |
| 1008 Aggregate Adjustment months @$ | | 0 00 | |
| 1100 Title Charges. | | | |
| 1101 Settlement or closing fee to Title America | | 120 00 | 120 00 |
| 1102 Abstract or title search | | | |
| 1103 Title examination | | | |
| 1104 Title insurance binder | | | |
| 1105 Document preparation to Title America | | 60 00 | |
| 1106 Notary fees to Annette Bennet | | 20 00 | 10 00 |
| 1107 Attorney's Fees | | | |
| (includes above item numbers ) | | | |
| 1108 Title Insurance | | | |
| (included above item numbers ) | | | |
| 1109 Lender's coverage $ 198,000.00 to Title America | | 140 00 | |
| 1110 Owner's coverage $ 247,500.00 to Title America | | | 905 00 |
| Lender's coverage $ 49,500.00 to Title America | | 125 00 | |
| 1111 Form 100 to Title America | | 50 00 | |
| 1112 Form 140 1 to Title America | | 60 00 | |
| 1113 Tax Certificate to Title America | | 30 00 | |
| 1114 Express Delivery Fee to Title America | | 50 00 | 25 00 |
| 1115 Loan Closing Fee to Title America | | 240 00 | |
| 1116 Loan Closing Fee-2nd Mtg to Title America | | 180 00 | |
| 1200 Government Recording and Transfer Charges | | | |
| 1201 Recording Fees Deed$ 11 00 Mortgage $ 66 00 Release $ | | 77 00 | |
| 1202 City/County tax/stamps | | | |
| 1203 State tax/stamps Deed$ 24 75 Mortgage $ 0 00 | | 24 75 | |
| 1204 Transfer Tax | | | |
| 1205 City Transfer Tax | | | |
| 1206 County Transfer Tax | | | |
| 1206 Release Recordings to Title America | | | 40 00 |
| 1207 2nd Deed of Trust to Jefferson County Clerk | | 71 00 | |
| 1300 Additional Settlement Charges | | | |
| 1301 Survey | | | |

| ESCROW FILE NUMBER | | OMB No | |
|---|---|---|---|
| 1302 Past Inspection | | | |
| 1303 2006 taxes to Jefferson County Treasurer | | | 2,097 62 |
| 1304 Furnace Escrow to Tim Driscoll | | | 2,250 00 |
| 1305 Drain Cleanout to Master Drains & Plumbing, Inc | ( $225 00 POC) | | |
| 1306 water escrow to Denver Water | | | 100 00 |
| 1307 | | | |
| 1400 Total Settlement Charges (Enter on line 103,Section J -and- line 502, Section K) | | 5,015 60 | 14,952 62 |

ESCROW FILE NUMBER                                                    OMB No

HUD-1 Settlement Statement Certification

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement

Buyers Signatures:                              Sellers Signatures

Jeramon J Gish                                  Kenneth A Blenker

Anne K Gish                                     Shnethe L Blenker

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction

Settlement Agent.

                                                2-16 06

Title America                                   Date

WARNING It is a crime to knowingly make false statements to the United States on this or any similar form Penalties upon conviction can include a fine and imprisonment For details see Title 18 U S Code Section 1001 and Section 1010



# CERTIFICATION ADDENDUM TO
# HUD-1 SETTLEMENT STATEMENT

Loan Number

Property Address   9570 WEST MAPLEWOOD PLACE, LITTLETON, COLORADO 80123

I have carefully reviewed the HUD-1 settlement statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction   I further certify that I have received a copy of the HUD-1 Settlement Statement

| | | | |
|---|---|---|---|
| JEREMIAH J. GISH | Borrower | KENNETH A. BLENKER | Seller |
| ANNE K. GISH | Borrower | CHRISTINE L. BLENKER | Seller |
| | Borrower | | Seller |
| | Borrower | | Seller |
| | Borrower | | Seller |
| | Borrower | | Seller |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction   I have caused or will cause the funds to be disbursed in accordance with this statement

Settlement Agent                              2-16-07
ANNETTE                                       Date

WARNING:  It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment   For details see   Title 18  U S  Code Section 1001 and Section 1010

Representation Of Printed Document
**CUSTOMER ACCOUNT ACTIVITY STATEMENT 2009**
The information furnished below is not to be used for IRS reporting.
IMPORTANT TAX RETURN DOCUMENT ATTACHED TO BILLING STATEMENT

| PROCESS DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT RECEIVED | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | OPTIONAL INSURANCE | LATE CHARGES | OTHER |
|---|---|---|---|---|---|---|---|---|
| 01/02 | PAYMENT | 482.08 | 22.48 | 439.60 | | | | |
| 02/06 | PAYMENT | 482.08 | 22.68 | 439.40 | | | | |
| 03/13 | PAYMENT | 472.08 | 22.89 | 439.19 | | | | 10.00 |
| 04/01 | PAYMENT | 482.08 | 23.09 | 438.99 | | | | |
| 05/18 | PAYMENT | 472.08 | 23.30 | 438.78 | | | | 10.00 |
| 06/18 | LATE CHARGE | | | | | | -23.10 | |
| 06/30 | PAYMENT | 472.08 | 23.51 | 438.57 | | | | 10.00 |
| 06/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| 07/16 | LATE CHARGE | | | | | | -23.10 | |
| 07/30 | PAYMENT | 472.08 | 23.72 | 438.36 | | | | 10.00 |
| 07/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| 08/17 | LATE CHARGE | | | | | | -23.10 | |
| 08/28 | PAYMENT | 472.08 | 23.93 | 438.15 | | | | 10.00 |
| 08/28 | PAYMENT | 23.10 | | | | | 23.10 | |
| 09/16 | LATE CHARGE | | | | | | -23.10 | |
| 09/30 | PAYMENT | 472.08 | 24.14 | 437.94 | | | | 10.00 |
| 09/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| 10/16 | LATE CHARGE | | | | | | -23.10 | |
| 10/23 | LATE CHARGE ADJ | | | | | | 23.10 | |
| 10/30 | PAYMENT | 462.08 | 24.36 | 437.72 | | | | |
| 11/16 | LATE CHARGE | | | | | | -23.10 | |
| 11/30 | PAYMENT | 472.08 | 24.58 | 437.50 | | | | 10.00 |
| 11/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| 12/15 | LATE CHARGE | | | | | | -23.10 | |
| 12/30 | PAYMENT | 472.08 | 24.80 | 437.28 | | | | 10.00 |
| 12/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| | ENDING BALANCE | | $48,787.91 | | $0.00 | | | |

Internet Reprint

Representation Of Printed Document
CUSTOMER ACCOUNT ACTIVITY STATEMENT 2010
The information furnished below is not to be used for IRS reporting.
IMPORTANT TAX RETURN DOCUMENT ATTACHED TO BILLING STATEMENT

| PROCESS DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT RECEIVED | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | OPTIONAL INSURANCE | LATE CHARGES | OTHER |
|---|---|---|---|---|---|---|---|---|
| 01/19 | LATE CHARGE | | | | | | -23.10 | |
| 01/29 | PAYMENT | 472.08 | 25.02 | 437.06 | | | | 10.00 |
| 01/29 | PAYMENT | 23.10 | | | | | 23.10 | |
| 02/16 | LATE CHARGE | | | | | | -23.10 | |
| 02/26 | PAYMENT | 472.08 | 25.25 | 436.83 | | | | 10.00 |
| 02/26 | PAYMENT | 23.10 | | | | | 23.10 | |
| 03/16 | LATE CHARGE | | | | | | -23.10 | |
| 03/31 | PAYMENT | 472.08 | 25.47 | 436.61 | | | | 10.00 |
| 03/31 | PAYMENT | 23.10 | | | | | 23.10 | |
| 04/13 | NSF REVRSL LONG | | | | | | -23.10 | |
| 04/13 | NSF REVRSL LONG | | -25.47 | -436.61 | | | | -10.00 |
| 04/15 | PAYMENT | 472.08 | 25.47 | 436.61 | | | | 10.00 |
| 04/15 | PAYMENT | 23.10 | | | | | 23.10 | |
| 04/16 | LATE CHARGE | | | | | | -23.10 | |
| 04/30 | PAYMENT | 472.08 | 25.70 | 436.38 | | | | 10.00 |
| 04/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| 05/17 | LATE CHARGE | | | | | | -23.10 | |
| 05/28 | PAYMENT | 472.08 | 25.93 | 436.15 | | | | 10.00 |
| 05/28 | PAYMENT | 23.10 | | | | | 23.10 | |
| 06/16 | LATE CHARGE | | | | | | -23.10 | |
| 06/30 | PAYMENT | 472.08 | 26.16 | 435.92 | | | | 10.00 |
| 06/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| 07/16 | LATE CHARGE | | | | | | -23.10 | |
| 07/30 | PAYMENT | 472.08 | 26.40 | 435.68 | | | | 10.00 |
| 07/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| 08/16 | LATE CHARGE | | | | | | -23.10 | |
| 08/31 | PAYMENT | 472.08 | 26.63 | 435.45 | | | | 10.00 |
| 08/31 | PAYMENT | 23.10 | | | | | 23.10 | |
| 09/16 | LATE CHARGE | | | | | | -23.10 | |
| 09/30 | PAYMENT | 472.08 | 26.87 | 435.21 | | | | 10.00 |
| 09/30 | PAYMENT | 23.10 | | | | | 23.10 | |
| 10/16 | LATE CHARGE | | | | | | -23.10 | |
| 11/16 | LATE CHARGE | | | | | | -23.10 | |
| 12/16 | PAYMENT | 472.08 | 27.11 | 434.97 | | | | 10.00 |
| 12/16 | LATE CHARGE | | | | | | -23.10 | |
| | ENDING BALANCE | | $48,527.37 | | $0.00 | | | |

**Aurora Bonk** fsb
P.O. Box 1706
Scottsbluff, NE 69363-1706
www.myAuroraLoan.com

REPRESENTATION OF PRINTED DOCUMENT
**CUSTOMER ACCOUNT ACTIVITY**
**STATEMENT 2011**

2037

JEREMIAH J GISH
ANNE K GISH
9570 W MAPLEWOOD PL
LITTLETON CO 80123-3432

LOAN NUMBER | 2037

| PROCESS DATE | TRANSACTION DESCRIPTION | TOTAL AMOUNT RECEIVED | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | OPTIONAL INSURANCE | LATE CHARGES | OTHER |
|---|---|---|---|---|---|---|---|---|
| 01/18 | LATE CHARGE | | | | | | 23.10- | |
| 02/18 | LATE CHARGE | | | | | | 23.10- | |
| 03/09 | MISC FC,BK,REO | | | | | | | 105.00 |
| 03/18 | LATE CHARGE | | | | | | 23.10- | |
| 04/18 | LATE CHARGE | | | | | | 23.10- | |
| 05/18 | LATE CHARGE | | | | | | 23.10- | |
| 06/18 | LATE CHARGE | | | | | | 23.10- | |
| 07/08 | LATE CHARGE ADJ | | | | | | 207.90 | |
| 07/27 | SERVICER ADVANCE | 105.00- | | | | | | 105.00- |
| 07/27 | INIT ESCROW DEP | 104.99- | 105.00- | .01 | | | | |
| 08/01 | SERV TRANSFER | | 48,632.37 | | | | | |

C26920

INTERNET REPRINT

01/11/12

Loanhist.rpt

07/31/2018 2:35:26PM

# Real Time Resolutions, Inc.
## Loan History Summary

Page #1

| Loan ID | Borrower Name |
|---|---|
| 2037 | JEREMIAH J GISH |

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/11/15 | 03/01/15 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 716.10 | $ 0.00 |
| 02/16/14 | 02/01/14 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 693.00 | $ 0.00 |
| 01/16/14 | 01/01/14 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 669.90 | $ 0.00 |
| 12/16/13 | 12/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 646.80 | $ 0.00 |
| 11/16/13 | 11/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 623.70 | $ 0.00 |
| 10/16/13 | 10/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 600.60 | $ 0.00 |
| 09/16/13 | 09/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 577.50 | $ 0.00 |
| 08/16/13 | 08/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 554.40 | $ 0.00 |
| 07/31/13 | 11/01/10 | Inv Loan Purchase | 0 / | 0.00 | | 48,527.37 | | | | | 531.30 | $ 0.00 |
| 07/31/13 | 11/01/10 | Investor Loan Sale | 0 / | 0.00 | | 48,527.37 | | | | | 531.30 | $ 0.00 |
| 07/16/13 | 07/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 531.30 | $ 0.00 |
| 06/16/13 | 06/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 508.20 | $ 0.00 |
| 05/16/13 | 05/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 485.10 | $ 0.00 |
| 04/16/13 | 04/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 462.00 | $ 0.00 |
| 03/16/13 | 03/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 438.90 | $ 0.00 |
| 02/16/13 | 02/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 415.80 | $ 0.00 |
| 01/16/13 | 01/01/13 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 392.70 | $ 0.00 |
| 12/16/12 | 12/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 369.60 | $ 0.00 |
| 11/16/12 | 11/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 346.50 | $ 0.00 |
| 10/16/12 | 10/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 323.40 | $ 0.00 |
| 09/16/12 | 09/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 300.30 | $ 0.00 |
| 08/16/12 | 08/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 277.20 | $ 0.00 |
| 07/16/12 | 07/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 254.10 | $ 0.00 |
| 06/16/12 | 06/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 231.00 | $ 0.00 |
| 05/16/12 | 05/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 207.90 | $ 0.00 |
| 04/25/12 | 11/01/10 | Inv Loan Purchase | 0 / | 0.00 | | 48,527.37 | | | | | 184.80 | $ 0.00 |
| 04/25/12 | 11/01/10 | Investor Loan Sale | 0 / | 0.00 | | 48,527.37 | | | | | 184.80 | $ 0.00 |
| 04/16/12 | 04/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 184.80 | $ 0.00 |
| 03/16/12 | 03/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 161.70 | $ 0.00 |
| 02/16/12 | 02/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 138.60 | $ 0.00 |
| 01/16/12 | 01/01/12 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 115.50 | $ 0.00 |
| 12/16/11 | 12/01/11 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 92.40 | $ 0.00 |

Loanhist.rpt

# Real Time Resolutions, Inc.

07/31/2018 2:35:26PM

## Loan History Summary

| Loan ID | Borrower Name |
|---|---|
| 2037 | JEREMIAH J GISH |

| Trans Date | Due Date | Trans Desc | Check# Money Type | Trans Amount | Principal Amount | Principal Balance | Interest Amount | Escrow Amount | Escrow Balance | Late Charge Amount | Late Charge Balance | Unapplied Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/16/11 | 11/01/11 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 69.30 | $ 0.00 |
| 10/16/11 | 10/01/11 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 46.20 | $ 0.00 |
| 10/02/11 | 09/01/11 | Late Charge Assess | 0 / 0 | (23.10) | | 48,527.37 | | | | (23.10) | 23.10 | $ 0.00 |
| 08/03/11 | 11/01/10 | New Loan | 0 / | 0.00 | | 48,527.37 | | | | | 0.00 | $ 0.00 |
| | | | | | $ 0.00 | | $ 0.00 | $ 0.00 | | | | |