IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00517-NRN

JEREMIAH J. GISH and
ANNE K. GISH,

Plaintiffs,

v.

REAL TIME RESOLUTIONS, INC., a Texas Corporation, and
DOES 1 through 100, inclusive,

Defendant.

---

**ORDER ON
DEFENDANT'S MOTION TO DISMISS COMPLAINT
PURSUANT TO RULE 12(B)(6) (DKT. #8)**

---

**N. Reid Neureiter
United States Magistrate Judge**

This case is before the Court for all purposes pursuant to 28 U.S.C. § 636(c),

upon the consent of the parties (Dkt. #16) and the Order of Reference entered by Chief

Judge Philip A. Brimmer on April 12, 2019 (Dkt. #17). Now before the Court is

Defendant Real Time Resolutions, Inc.'s ("RTR") Motion to Dismiss Complaint Pursuant

to Rule 12(b)(6). Dkt. #8. Plaintiffs Jeremiah J. Gish and Anne K. Gish ("Plaintiffs") filed

a response (Dkt. #14), RTR filed a reply (Dkt. #19) and, upon order of the Court (Dkt.

#21), a supplement to that reply. Dkt. #23. The Court has taken judicial notice of the

Court's file and considered the applicable Federal Rules of Civil Procedure and case

law. Now, being fully informed and for the reasons discussed below, it is **ORDERED**

that that the subject motion (Dkt. #8) be **GRANTED**, and that Plaintiffs' Complaint (Dkt. #1) be **DISMISSED**.

## BACKGROUND

Unless otherwise noted, the following well-pled allegations are taken from Plaintiffs' Complaint and are presumed to be true for the purposes of the RTR's motion to dismiss.

Plaintiffs are the owners of a parcel of real property located at 9570 W. Maplewood Pl., Littleton, CO 80123. Dkt. #1 at 2, ¶ 3. On April 1, 2007, Plaintiffs, pursuant to a Note, borrowed $49,500.00 from Clarion Mortgage Capital, Inc. ("CMC") and, in turn, executed a Deed a Trust granting CMC a security interest in the property. *Id.*, ¶ 5. The servicing rights to Plaintiffs' loan was then transferred several times. *See* Dkt. #1-1 at 32–34.[1] Ultimately, on August 1, 2011, servicing rights were transferred to RTR. *Id.* at 35–38.

On July 17, 2018, Mr. Gish sent two letters to RTR purporting to be Qualified Written Requests ("QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA"). *See id.* at 7–21. The letters request various documents regarding the loan, including loan origination and transfer documentation and payment history.[2] RTR responded to the letters on August 1, 2018. *See id.* at 31–39.

---

[1] Plaintiffs attached several exhibits to their Complaint, but since all the exhibits were lumped into a single 47-page document (Dkt. #1-1), the Court cites to the specific CM-ECF page stamp at the top right corner of the page.

[2] RTR claims that it received only part of one of the two letters delivered by Plaintiffs. This fact is not material the Court's analysis.

Unsatisfied with RTR's response, Mr. Gish filed a complaint with the Colorado Division of Banking. On October 18, RTR responded to the complaint, stating that while RTR had provided Mr. Gish with complete payment histories—including late fees and accrued interest—from 2009 through the present, RTR did not have access to the payment history from April 1, 2007 through the end of 2008, despite having requested such information from the prior servicer. *Id.* at 40–41. RTR informed Mr. Gish that if it received that information, it would immediately provide him a copy of it.

Plaintiffs then filed suit. In their Complaint (Dkt. #1), they assert four claims for relief: (1) that RTR violated RESPA by failing to respond properly to Plaintiffs' QWR; (2) that RTR violated the Fair Debt Collection Practices Act ("FDCPA") by failing to respond properly to their QWR, by falsely representing the character, amount, or legal status of any debt, by using a false representation or deceptive means to collect a debt, and by using unfair and deceptive means to collect a debt; (3) that RTR committed fraud by presenting an allegedly forged agreement between Aurora Loan Services, LLC and RTR and by failing to provide Plaintiffs with a payment history covering the entire life of the loan; and (4) that RTR made misrepresentations regarding its authority to collect the loan, their ownership of the loan, and the balance of the loan. RTR now moves to dismiss all four claims under Rule 12(b)(6).

## LEGAL STANDARDS

### I. Pro Se Plaintiffs

Plaintiffs are proceeding pro se. The Court, therefore, "review[s] [their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007)

(citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

Generally, if a court considers matters outside the pleadings in deciding a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule

56." Fed. R. Civ. P 12(d). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Here, Plaintiffs attached several documents as exhibits to their Complaint, including RTR's response to their July 17, 2018 letters. *See* Dkt. #1-1 at 31–38. However, several of the documents referenced in that response were not included in the attachment. RTR attached to their motion the documents provided by RTR in response to Plaintiffs' letters. *See* Dkt. #8-1. The Court can consider these documents because they are referred to in and central to Plaintiffs' Complaint and because Plaintiffs do not challenge their authenticity.

**ANALYSIS**

**I. RESPA Claim**

Plaintiffs allege that RTR violated RESPA by failing to respond to their QWR. RTR, on the other hand, argues that Plaintiffs' RESPA claim should be dismissed because (1) Plaintiffs' requests was not a QWR; (2) even if it was a QWR, RTR responded appropriately; and (3) Plaintiffs have not alleged any actual damages.

The Tenth Circuit recently summarized RESPA and its requirements:

> RESPA provides a mechanism for borrowers to seek information from and protest errors to their mortgage servicers. Specifically, RESPA requires servicers to respond to a borrower's qualified written request (QWR). A QWR is a "written correspondence" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either (a) asserts an error in the borrower's account or (b) requests information related to the servicing of the borrower's account. 12 U.S.C. § 2605(e)(1). Once a servicer receives a QWR, it must "provide a written response acknowledging receipt of the correspondence within 5 [business] days." § 2605(e)(1)(A). Then, within 30 business days, the servicer must (1) correct

the asserted error; (2) explain why it believes the account isn't in error; (3) provide the requested information; or (4) explain why the requested information is unavailable. § 2605(e)(2).

But a servicer's statutory duty to respond to a borrower's communication doesn't "arise with respect to all inquiries or complaints from borrowers to servicers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). Rather, a letter isn't a QWR—and thus doesn't trigger the servicer's duty to respond—unless it "relat[es] to servicing," which RESPA defines as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . ., and making the payments of principal and interest and such other payments." *Id.* (omission in original) (quoting § 2605(i)(3) ). Further, RESPA's implementing regulations allow servicers to designate an address to which all QWRs must be sent before they will trigger the servicer's duties under RESPA. 12 C.F.R. § 1024.36(b); *see also Berneike*, 708 F.3d at 1149 (holding that servicers have no duty to respond to QWRs not sent to designated address). And the regulations also excuse a servicer from its duty to respond to a QWR if the servicer determines the QWR makes a request that is duplicative or overbroad. § 1024.36(f)(1). But in such a case, the "servicer shall notify the borrower of its determination in writing not later than five [business] days . . . after making such determination." § 1024.36(f)(2).

Moreover, not all RESPA violations are actionable. RESPA creates a private cause of action only for borrowers who can show actual damages from a servicer's noncompliance. *See* § 2605(f)(1)(A). But borrowers may recover statutory damages of up to $2,000 per violation if they can show the violation was part of a "pattern or practice of noncompliance" with RESPA's requirements. § 2605(f)(1)(B). We have thus held that "to survive a Rule 12(b)(6) motion to dismiss a claim under § 2605(e) of RESPA, plaintiffs must plead actual damages stemming from the failure to respond to requests or a pattern or practice of misconduct." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013*); see also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (explaining "there must be a 'causal link' between the alleged [RESPA] violation and the damages" (quoting *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) ) ); *cf. Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012) (holding that conclusory allegation that RESPA violations caused plaintiffs over $50,000 in damages failed to state a claim). And importantly, borrowers must plead damages for "each such failure" to respond. § 2605(f).

*Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 668–70 (10th Cir. 2018) (unpublished).

The Court has carefully reviewed the two letters Plaintiffs allege constitute a QWR. Most of Plaintiffs' inquiries, on their face, do not relate to the "servicing" of their loan, i.e., they do not concern the periodic, scheduled payments plaintiffs would have made pursuant to pre-established terms of their loan. For example, in the second, longer letter, titled "Request for Validation of Debt (FDCPA)," Plaintiffs state that they are "disputing the validity of the current debt," and request documents to determine that their loan "[w]as originated in lawful compliance with all federal and state laws"; "[t]hat any sale or transfer of my loan was conducted in accordance with proper laws and was a 'true sale' of the note"; "[t]hat the claimed holder in due course of the promissory note and deed of trust if holding such note in compliance with state and federal laws and is entitled to the benefits of the payments"; "[t]hat all appropriate disclosures of terms, costs, commissions, rebates, kickbacks, fees etc. were properly disclosed at the inception of my loan"; "[t]hat each servicer and sub-servicer of my mortgage has served my mortgage in accordance with the terms of my mortgage, promissory note, and/or deed of trust"; and "[t]hat each servicer and sub-servicer of my mortgage has serviced my mortgage in compliance with local, state and federal statutes, laws and regulations[.]" Dkt. #1-1 at 10. "Queries that essentially call for, or dispute, an interpretation of the underlying loan agreement do not constitute a qualified written request." *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1144 (D. Colo. 2013). RTR cannot be liable under RESPA for any failure to respond to such overbroad inquiries unrelated to the servicing of Plaintiffs' loan.

However, some of the requested information does relate the payment history on the loan and its outstanding balance. However, RTR responded to these requests with a

Loan History Summary, a prior servicer's Customer Account Activity Statements, and other documents. *See* Dkt. #8-1. Although RTR concedes that it did not provide a payment history from CMC, RTR later clarified that it requested the payment history and would provide it upon receipt. *See* Dkt. #1-1 at 40–41. Thus, Plaintiffs have failed to allege that RTR's response was inadequate under RESPA.

Finally, Plaintiffs have not plausibly pled that they suffered any actual damages as a result of RTR's alleged failure to comply with RESPA's requirements, or that the noncompliance was part of a pattern or practice of misconduct. Specifically, Plaintiffs' allegation that they were damaged as a result of RTR's failure to respond to the QWR "since the Plaintiffs made numerous mortgage payments to a fraudulent loan balance" (Dkt. #1 at 8, ¶ 37) is not plausible. During the oral argument on this matter, Mr. Gish admitted that he had not made any payments on the loan since 2010, before the servicing rights were transferred to RTR. Therefore, Plaintiffs have not alleged any causal link between RTR's violation of RESPA and these alleged damages. *See Ogden v. PNC Bank,* No. 13-cv-01620-MSK-MJW, 2014 WL 4065617, at *3 (D. Colo. Aug. 15, 2014), aff'd, 599 F. App'x 331 (10th Cir. 2015) (damages for emotional distress suffered prior to plaintiff sending a QWR could not be causally linked to alleged RESPA violation). Moreover, Plaintiffs' claim that they have "suffered the slander of their representation due to the fact that an illegitimate loan balance has been attributed to them and reported to credit reporting agencies and bureaus" is vague, conclusory, and undermined by their concession that they have not paid on the loan for at least nine years.

Accordingly, Plaintiffs' RESPA claim must be dismissed.

## II. FDCPA Claim

Plaintiffs allege that RTR violated 15 U.S.C. §§ 1692(e)(2), (e)(10) and (f) of the

the FDCPA by (1) falsely representing the character, amount, or legal status of

Plaintiffs' debt; (2) using a false representation or deceptive means to collect a debt;

and (3) using unfair or deceptive means to collect a debt. Dkt. #1 at 9, ¶¶ 42–44. This

claim also fails.

The FDCA prohibits debts collectors from using any false, deceptive, or

mispleading representations. 15 U.S.C. § 1692(e)(2) forbids the "false representation

of—(A) the character, amount, or legal status of any debt; or (B) any services rendered

or compensation which may be lawfully received by any debt collector for the collection

of a debt." Section 1692(e)(10) proscribes the "use of any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information

concerning a consumer." Section 1692(f) prohibits using "unfair or unconscionable

means to collect or attempt to collect any debt."

Plaintiffs fail to plausibly allege that RTR made any misrepresentations in

connection with collecting a debt. Plaintiffs point to RTR's failure to "provide a payment

history for the life of the loan from all servicers and agents." However, RTR claims that it

did not possess the complete payment history because they did not have

documentation from CMC, but that it did turn over all the records in its possession. And

RTR later explained that it had requested and would promptly turn over CMC records.

Plaintiffs do not explain how or why this conduct constitutes a misleading or unfair

representation.

Plaintiffs other examples of false or deceptive practices seem to be premised on misunderstandings of the facts and law. Their claim that the fact that their mortgage rose from $49,500.00 to $52,872.23 must be a result of a nefarious plot is unavailing because they do not understand that the former number is the balance while the latter is the payoff figure, and these two amounts are not the same due to the irrefutable truth that interest accrues over time. Similarly, Plaintiffs allege that the Collection Agreement (*see* Dkt. #8-1 at 2–8) between RTR and Aurora Loan Services, LLC, which serviced Plaintiff's loan between 2007 and 2011, must have been forged because it was entered into in 2005, while Plaintiffs' loan did not exist until 2007. However, as RTR points out, this agreement was not limited to loans in existence in 2005 but contemplated that loans made in the future, such as Plaintiffs' loan, could be transferred between the contracting parties.

Because the documents Plaintiffs rely on for their FDCPA claim do not indicate that RTR made any inaccurate or misleading representations, Plaintiffs' second claim for relief must be dismissed.

## III. Fraud and Misrepresentation Claims

A heightened pleading standard applies where a party alleges fraud. Rule 9(b) demands that "[i]n alleging fraud or mistake, a party **must state** with **particularity** the circumstances constituting fraud or mistake." (Emphasis added.) In the "paradigmatic" case of *Trussell v. United Underwriters, Limited*, the Court explained that Rule 9(b) "requires identification of the circumstances constituting fraud or mistake." 228 F. Supp. 767, 774–75 (D. Colo. 1964); *see Noland v. Gurley*, 566 F. Supp. 210, 215–16 (D. Colo. 1983). "More specifically," the Tenth Circuit "requires a complaint alleging fraud to 'set

forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)), *cert. denied*, 531 U.S. 926 (2000). Rule 9(b) does not, however, "require the pleading of detailed evidentiary matter, nor does it require any particularity connection with an averment of intent, knowledge, or condition of mind." *Trussell*, 228 F. Supp. at 774.

Plaintiffs have failed to meet Rule 9(b)'s heightened pleading standard. Plaintiffs' fraud and misrepresentation claims are premised on the same facts as their FDCPA claim; specifically, that the 2005 Collection Agreement between RTR and Aurora Loan Services, LLC was somehow "forged" and/or "void" because it preceded the origination of their loan. Because Plaintiffs' fraud and misrepresentation claims reveal the same fundamental factual and legal misconceptions that marred their FDCPA claim, the claims likewise fail under Rule 12(b)(6).

Moreover, under Colorado law, damages is an essential element of causes of action for both fraud and misrepresentation. *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) ("To establish fraud, the plaintiff must show the defendant made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff."); *Nielson v. Scott*, 53 P.3d 777, 779–80 (Colo. App. 2002) ("The elements of fraudulent misrepresentation are: (1) a fraudulent misrepresentation of material fact; (2) the plaintiffs' reliance on the material

12

representation; (3) the plaintiffs' right or justification in relying on the misrepresentation; and (4) reliance resulting in damages."). Plaintiffs do not plausibly allege that they were damaged as a result of RTR's conduct. They do not describe their alleged emotional distress in any detail, and any "slander of their reputation" is equally attributable to their (admitted) years-long failure to make payments on the loan.

## CONCLUSION

It is hereby **ORDERED** that Defendant's Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) (Dkt. #8) is **GRANTED** and that Plaintiff's Complaint (Dkt. #1) is **DISMISSED WITH PREJUDICE**.

Dated:     December 4, 2019
           Denver, Colorado         N. Reid. Neureiter
                                     United States Magistrate Judge